THOMAS H. MAGHEE, Appellant, v. THE CAMDEN AND AMBOY RAILROAD TRANSPORTATION COMPANY, Respondent.

A contract made by a railroad corporation to transport and deliver goods at a point beyond the terminus of its own line contained the following clause: "Unavoidable accidents of the railroad and of fire in the depot excepted."—*Held*, that in the absence of proof of any other or new contract, this exception would be held to extend to every other connecting carrier, who shared the freight specified in the bill of lading, and that in an action against such connecting carrier, the goods having been lost while in its possession, he could claim the benefit of it.

The place where a carrier is accustomed to receive, deposit and keep ready for transportation or delivery, merchandise is a depot, within the general signification of the word.

When a carrier accepts goods to be carried, with a direction on the part of the owner to carry them in a particular way, or by a particular route, he is bound to obey such directions; and if he attempts to perform his contract in a manner different from his undertaking, he becomes an insurer, and cannot avail himself of any exception in the contract.

But if it should be shown in such a case that the loss must certainly have occurred from the same cause, if there had been no default or deviation, the carrier should be excused. The burden of proof of this fact, however, is on the carrier. ANDREWS, J.

Where the contract of a carrier is that the goods should be carried " all rail,"—*Held*, that the *necessary* crossing of ferries, in the transportation was not a deviation, and that the contract to carry "all rail" would be performed by the transportation by rail as far as was practicable. If, however, the goods could have been carried by rail, their transportation by any other mode, even for a few miles, would render the carrier liable as an insurer.

(Argued April 26th; decided May 30th, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, in the first judicial district, affirming the judgment of the Special Term in favor of defendants.

On the 21st of June, 1864, at Louisville, Ky., one Hunter, the plaintiff's agent, delivered to the Jeffersonville Railroad Company, for transportation to New York, certain merchandise, the property of the plaintiff. The company signed a bill of lading, which was sent to the plaintiff, together with

an invoice of the merchandise. The bill of lading, after acknowledging the receipt of the merchandise by the Jeffersonville Railroad Company from Hunter, on account and risk of whom it might concern, contain an engagement " to deliver in like good condition and order at New York, unavoidable accidents of the railroad and *fire in depot excepted,* to Thomas H. Maghee or assigns, he or they paying freight at rates therein specified, all rail, P. R. R." The merchandise was transported over the route of the Jeffersonville Railroad Company to its terminus at Indianapolis, and thence by other companies, including defendants, to New York, upon an engagement between the several companies that they should share the freight specified in the bill of lading, and that the defendants should collect it for the common benefit. Defendants, a New Jersey corporation, engaged in the business of transporting passengers and freight between Philadelphia and New York, received the merchandise, then in due course of transportation, at Philadelphia, July 9th, 1864, and transported it over their railroad from Philadelphia to Amboy, and thence twenty miles by steamboat, which was a part of their regular line, to their depot on pier No. 1, North river, in the city of New York. The goods could have been transported from Philadelphia to New York by rail all the way. On the night of Sunday, July 10th, 1864, the depot, with its contents, including this merchandise, was destroyed by fire. Such destruction was not occasioned by design or neglect of either party. This action, brought by the plaintiff to recover their value, was tried, without a jury, by J. F. BARNARD, J. The court found, as matter of fact, that the destruction of the property occurred by fire in the depot, and was within the exception contained in the bill of lading, and, as a conclusion of law, that defendant was entitled to judgment.

*Charles Jones,* for the appellant. Where goods are delivered to a carrier, to be carried beyond the end of his own line, he may make a contract with other carriers. That con-

tract binds the shipper and inures to his benefit. (6 How. U. S., 380.) The shipper can sue the sub-contractor. (2 Greenleaf's Ev., § 210; *Sanderson* v. *Lambertin*, 6 Binn., 129.) The second carrier is not the servant of the first. (6 How. U. S., 380; 2 Kern., 243; 1 Hilt., 235.) If the defendants are liable as common carriers, they are liable for the loss. (*Merritt* v. *Earle*, 29 N. Y., 115.) Construction of the contract, "all rail." (*Cassilly* v. *Young*, 4 B. Mon., 265; *Hand* v. *Baynes*, 4 Whart., 204.) The goods should have been stored, and not left in a shed. (*Merwin* v. *Butler*, 17 Conn., 138; *Ostrander* v. *Brown*, 15 Johns., 39; *Fisk* v. *Newton*, 1 Denio, 45.)

*Charles F. Sandford*, for the respondent. On the question of the carriers' right by special contract to secure exemption from liability. (*Harris* v. *Pockwood*, 3 Taunt., 264; *Beckwood* v. *House*, 5 Rawle (Penn.), 179; *N. J. S. Nav. Co.* v. *Merchants' Bank*, 6 How. U. S., 382; *Stoddard* v. *Long Island R. R. Co.*, 5 Sand., 180; *Parsons* v. *Monteath*, 13 Barb., 524; *Dorr* v. *N. J. S. Nav. Co.*, 1 Kern., 485; *Wells* v. *Steam Nav. Co.*, 4 Seld., 375; *Mercantile Mut. Ins. Co.* v. *Calebs*, 20 N. Y., 173; *Welles* v. *N. Y. Cent. R. R. Co.*, 26 Barb., 641; *Smith* v. *Same Defendants*, 29 Barb., 132; *Wells* v. *Same Defendants*, 24 N. Y., 181; *Bissell* v. *Same Defendants*, 25 N. Y., 442; *P. and O. Steam Nav. Co.* v. *Shand*, 11 Jurist, 771.) On the question of the liability of the contracting company. (*McGregor* v. *Kilgore*, 6 Ohio, 358; *Fitch* v. *Newberry*, 1 Douglass [Mich.], 1; *Muschamp* v. *Lancaster R. R. Co.*, 8 M. & W., 421; *Mucha* v. *L. and S. W. R. R. Co.*, 2 Exch., 415; *Weed* v. *Saratoga and S. R. R. Co.*, 19 Wend., 534; *Mallory* v. *Burrett*, 1 E. D. Smith, 234; *Fairchild* v. *Slocum*, 19 Wend., 329; *Crouch* v. *L. and N. W. R. R. Co.*, 14 C. B., 259; *Hart* v. *R. and S. R. R. Co.*, 4 Seld., 37; *Green* v. *Clark*, 2 Kern., 343; *Wilcox* v. *Parmelee*, 3 Sandf., 610; *Quimby* v. *Vanderbilt*, 17 N. Y., 306; *Schrœder* v. *Hudson R. R. R. Co.*, 5 Duer, 55.) On the

question of the respective liability of the companies. (*Ges-thorn* v. *S. S. R. R. Co.*, 8 Exch., 341 ; *Fitch* v. *Newberry*, 1 Douglass [Mich.], 1 ; *Muschamp* v. *Lancaster R. R. Co.*, 8 M. & W., 421 ; *Watson* v. *Ambergate R. R. Co.*, 15 Jur., 448 ; *Crouch* v. *L. and N. W. R. R. Co.*, 78 E. C. S., 254 ; *Hart* v. *R. and S. R. R. Co.*, 4 Seld., 37.)   The shipper, who secures to himself a through rate of freight, reduced in proportion as his risk is increased and that of the carrier is diminished, should be deemed to have estopped himself from asserting against any carrier a liability voluntarily assumed by himself, when he stipulated for the rate of freight by which the carrier's compensation is measured and determined. (*Collins* v. *B. and G. R. R. Co.*, 25 L. J. R. [Exch.], 188 ; S. C., 29 L. J. R. [Exch.], 41 ; *Coxon* v. *The G. W. R. R. Co.*, 5 H. & N., 274 ; *Fitch* v. *Newberry*, 1 Doug. [Mich.], 1 ; *N. J. Steam Nav. Co.* v. *Merchants' Bank*, 6 How. U. S., 366 ; *Allen* v. *Smith*, 8 Cow., 301 ; *Manuf. Oil Co.* v. *C. and A. R. R. Co.*, 52 Barb., 72 ; *Mallory* v. *Burrett*, 1 E. D. Smith, 234.)

ANDREWS J.   It will be convenient to consider in the first place, the nature and extent of the obligation of the Jeffersonville Railroad Company, under the contract of June 21, 1864, for the transportation of the property in question.

The road of that corporation commenced at Jeffersonville, on the Ohio river, in the State of Indiana, opposite Louisville, Kentucky, and terminated at Indianapolis, in the former State.

The goods were delivered to the corporation at Louisville, by the agent for the plaintiff, and on their receipt, a bill of lading was signed, whereby the Jeffersonville Railroad Company expressly agreed to deliver them to the plaintiff, in the city of New York, upon the payment by the plaintiff, or his assigns of a specified freight.

The undertaking of the corporation to deliver the goods was not absolute, but was qualified by the exception stated in the bill of lading, of " unavoidable accident of the railroad and

fire in the depot," and after the specification of the freight to be paid, were the words and letters " all rail P. R. R."

The execution of the bill of lading by the Jeffersonville Railroad Company, and its acceptance by the plaintiff, concurrently with the delivery and receipt of the property, constituted a special contract between the parties for the carriage of the goods.

That corporation undertook, thereby, the carriage for the whole distance between Louisville and the city of New York, and it could not perform its contract to carry, except by the use of the roads of other corporations connecting with it, and forming a consecutive route to the city of New York.

That a railroad corporation may bind itself, by a contract to carry goods to a point beyond the terminus of its own line of road, is affirmed by the general current of authority, in England and in this country. (*Muschamp* v. *Lancaster R. R. Co.*, 8 M. & W., 421; *Mucha* v. *London and S. W. Railway Co.*, 2 Exch., 415; *Perkins* v. *Portland*, 47 Me., 573; *Meyer* v. *Rutland, etc., R. R.*, 27 Vt., 110; Redfield on Railways, 284 and cases cited.)

And in this State the doctrine, if not established, has been recognized in several cases. (*Ward* v. *Saratoga and Schenectady R. R. Co.*, 19 Wend., 534; *Hart* v. *Rensselaer and Saratoga R. R. Co.*, 4 Seld., 37 *Burtis* v. *the Buffalo and State Line R. R. Co.*, 22 N. Y., 269; *Schrœder* v. *Hudson R. R. Co.*, 5 Duer, 55.)

There is a conflict between the English and American cases, as to the evidence by which a contract of a railroad corporation, to carry beyond the terminus of its own route, may be established; but this difference is immaterial in this case, as the contract of the Jeffersonville Railroad Company was express and unambiguous.

If the power of a railroad corporation, not specially authorized by its charter to make such a contract, is doubtful, such authority must be presumed in this case. The charter of the Jeffersonville Railroad Company is not in evidence;

and it is to be assumed, in the absence of proof, that the contract was not *ultra vires*, or made in violation of law.

The plaintiff, then, by the contract, employed that corporation as carrier for the whole distance; and it was liable to the plaintiff for any default in performing it, whether such default occurred on its own road, or the road of any other corporation in the course of the transit.

If, however, the action had been brought against the first carrier to recover the value of the goods, the plaintiff could not have recovered, if the defendant in such suit could have shown that they were lost by a peril, within the exception in the bill of lading, and without negligence on the part of itself or its agents. (*Clark* v. *Barnwell et al.*, 12 *How.* U. S., 272.)

It is claimed by the plaintiff, that the language " unavoidable accidents of the railroad, and of fire in the depot," refers to loss from the excepted causes, while the goods were on the road or in the depot of the Jeffersonville Railroad Company, and creates no exemption from liability for such loss occurring elsewhere.

If this is the true construction, the plaintiff was entitled to recover, although the liability of the defendant was measured by that of the first carrier. The defendant at the time of the loss by fire, held the goods as carrier, and they were not destroyed by unavoidable casualty.

But we are of opinion, that the exception applies to a loss by accident or fire upon any road or in any depot while the contract of carriage is in force.

The exception is in the same clause with and immediately follows the engagement of the Jeffersonville Railroad Company to deliver the goods in the city of New York.

It is reasonable to suppose that the compensation fixed for the carriage, had relation to the restricted liability assumed by the bill of lading. The Jeffersonville Railroad Company, by undertaking to carry the goods to the ultimate destination, had an interest to make the exception commensurate

with the scope and duration of its contract, and construing the contract with reference to the circumstances and subject-matter, the limit and construction of the language of the exception, claimed by the plaintiff, is not justified.

The fire occurred, while the goods were at the place where the defendant was accustomed to receive, deposit and keep ready for transportation or delivery the merchandise carried by it, to and from the city of New York, and this was a depot within the general signification of that word.

Leaving out of view, for the present, the words in the contract "all rail," it follows from what has been stated, that no recovery could have been had by the plaintiff against the Jeffersonville Railroad Company for the loss in question.

But the plaintiff insists that he stands in a more favorable position in respect to the defendant, and that the defendant having participated in the carriage of the goods, and the loss having occurred while they were in its possession as carrier, it must be deemed to have taken the goods subject to the common-law liability of carriers, and that it cannot claim the benefit of the exemption in the original contract.

It does not appear under what agreement the defendant received the goods, beyond the fact contained in the stipulation of the parties, and found by the court, that the goods were transported by the several connecting lines upon an understanding and agreement between them to share the freight specified in the bill of lading, and that the defendant should collect the whole freight for the common benefit.

In what proportion the division was to be made, or whether any company was to receive anything beyond the usual charge for the transportation over its road is not shown. It is not found that the several companies participating in the service were partners, and if the division was to be made as last suggested, the arrangement would not constitute a partnership between them. (*Welby* v. *West Cornwall Railway Co.*, 2 H. & N., 702; *Mylton* v. *The Midland Railroad Co.*, 4 H. & N., 614.)

It is to be inferred, however, from the fact found, and the

circumstances, that the goods were carried by the several connecting companies under some arrangement having relation to the plaintiff's contract with the first carrier. They were to share the freight "specified in the bill of lading."

The bill of lading, or a duplicate, usually, if not uniformly, accompanies the goods.

It was the duty of the Jeffersonville Railroad Company, under its contract, to provide for the transportation of the goods from the terminus of its road, by other lines; and no intervention of the plaintiff having been shown, it must be held that the connecting roads were acting under the employment of that corporation.

If the defendant took and carried the goods by contract made with the Jeffersonville Railroad Company, without any restriction of its ordinary liability, then it would not be denied that the plaintiff could avail himself of that contract, and recover of the defendant, notwithstanding the express contract with the Jeffersonville Railroad Company as carriers for the entire route.

All such contracts made by the first carrier would inure to his benefit, and he could at his election adopt them. (*Merchants Bank* v. *New Jersey Steam Nav. Co.*, 6 How. U. S., 380; *Green* v. *Clarke*, 2 Ker., 343; *Sanderson* v. *Lamberson*, 6 Binn., 129; 2 Green. Ev., § 210.)

But the plaintiff did not show that the defendant undertook to carry the goods under a contract more favorable to him than that which he made with the Jeffersonville Railroad Company; and the evidence does not authorize the inference that such a contract was made.

The defendant is to be regarded as having acted under and in subordination to the contract made with the first carrier, and can claim the benefit of any exception to which the Jeffersonville Railroad Company would have been entitled, if the action had been brought against that corporation.

The words, "all rail," inserted in the bill of lading, constituted a direction by the owner and an agreement by the

carrier that the transportation should be by rail, in distinction from any other mode of conveyance.

When a carrier accepts goods to be carried with a direction on the part of the owner, to carry them in a particular way, or by a specified route, he is bound to obey such direction; and if he attempts to perform his contract in a manner different from his undertaking, he becomes an insurer, and cannot avail himself of any exceptions in the contract. (*Danseth* v. *Wade*, 2 Scam., 285 ; *Hartung* v. *Pepper*, 11 Pick., 41.

*In Steel* v. *Flagg* (5 Barn. & Ald., 342), a parcel of cashier's notes were delivered to a carrier, to be carried by a mail coach, and were sent by a different coach and were lost; notice had been given to the carrier, of which the owner was cognizant that he would not be answerable for the value of any article to an amount exceeding five pounds, unless it was insured, and the evidence tended to show that the owner had concealed the nature and value of the package, and it was claimed that the concealment was a fraud upon the carrier, and avoided his contract.

But the court held the carrier liable, and Bailey J. said: " If this defendant had sent the parcel by the mail, in pursuance of his contract, I should have been of opinion that under the circumstances of the case, he would not have been liable for the loss, but having sent it by a different mode of conveyance, I am of opinion that he is liable."

This case is distinguished from the previous case of *Bateson* v. *Donovan* (4 B. & A., 20), on the ground that in this case the carrier acted in direct contravention of his contract. (Jones on Bailments, 28.)

In *Coleman* v. *New York Central Railroad Company* (33 N. Y., 610), the defendant received goods at Little Falls, destined to New York, " *via* People's Line," Albany, and agreed to deliver them to that line at the latter place. The line would not take them, and they were shipped by the defendant on a barge, and the barge and the goods were lost. The defendant was held to be liable, and Porter, J., said : " When forwarding agents send goods in a mode prohibited by the

owner, they do it at their own risk, and incur the liability of an insurer."

The same rule applies in case of deviation of a ship on the voyage, and is stated by Story as follows: "If the owner deviate from the voyage, he is responsible for all loss, even from unavertable casualty; for, under such circumstances, the loss is traced back through all the intermediate causes to the first departure from duty." (Story on Bailments, § 509.)

If it could be shown, in such a case, that the loss must certainly have occurred from the same cause, if there had been no default, misconduct or deviation, the carrier would be excused; but the burden of proof of this fact would be upon the carrier. (*Davis* v. *Garrett*, 6 Bing., 716; *Danseth* v. *Wade, supra;* Story on Bailments, *supra;* Abbott on Shipping, 362.)

The defendant in this case relied for its defence upon the contract made with the Jeffersonville Railroad Company, and must be held to affirm all its provisions.

The goods in question were, by the contract, to be sent to New York by the Pennsylvania railroad, as indicated by the letters " P. R. R." There could not have been a literal performance of the contract to send them by " all rail." It was necessary to carry them across the Ohio river at Louisville before they could be taken upon the cars of the Jeffersonville Railroad Company, and they could not reach New York without crossing the Hudson river at Jersey City.

But the contract is to have a reasonable construction, and the necessity of crossing ferries in the course of the transportation must have been known to the parties, and this water carriage from necessity must be deemed to have been authorized. The contract to carry by rail would have been substantially performed by the transportation by rail so far as was practicable.

The defendant was a carrier from Philadelphia to New York, by rail to South Amboy, and thence twenty miles to New York by water. It is found by the court that this dis-

tance by water was a part of the regular line traversed by the defendant in the prosecution of its business.

It appears in the evidence that there are several routes of carriage between Philadelphia and New York, and we think the court can take judicial notice of the existence of established railroad routes generally known and used.

The carrying of the goods by water from South Amboy to New York was not a necessity. The defendant, it is true, by its line could not have sent them otherwise; but upon seeing the direction in the bill of lading, it could have declined the service, together with the advantage which it might derive from performing it.

Having undertaken to carry the goods in violation of the instructions in the contract, it lost the benefit of the exception from liability.

This violation of duty brought the goods within reach of the peril which destroyed them, and the defendant is liable for the loss. The judgment should be reversed and a new trial granted.

Chief Judge and Folger and Rapallo, JJ., concur. Grover, J., dissented. Peckham, J., did not sit. Allen, J., having been of counsel, did not sit.

Judgment reversed. New trial granted.