NEW YORK, L. E. & W. R. CO. *v.* NATIONAL S. S. CO., Limited.

(*Supreme Court, General Term, First Department.* April 17, 1891.)

1. CARRIERS—CONNECTING LINES—LIABILITY FOR FREIGHT.

   Defendant, a steam-ship company, entered into a bill of lading with other carriers, which provided that it should not be liable "for loss or damage on any article or property whatever, by fire or other casualty, while in transit, or while in deposit, or places of trans-shipment, or at depots or landings at all points of delivery." Plaintiff, as the last of five connecting carriers, had paid all charges on a consignment of cotton, and placed it on a wharf preparatory to delivery to defendant; but before such delivery the cotton was destroyed by fire. *Held,* in an action by plaintiff to recover freight charges advanced by it, and its own charges, from defendant, that there was no liability upon defendant, under the bill of lading, to pay said advances and charges.

2. SAME—EVIDENCE OF CUSTOM.

   No liability arose until the cotton was on board defendant's steamer, in the absence of evidence from which a contract to pay the same from usage or a settled course of dealing between the parties might be implied.

Appeal from circuit court, New York county.

Action by the New York, Lake Erie & Western Railroad Company against the National Steam-Ship Company, Limited, to recover freight charges paid by the railroad company on 266 bales of cotton transported by itself and other carriers, but destroyed by fire before delivery to defendants. Defendants relied upon an exemption from liability for loss or damage by fire while goods were in transit or on deposit, contained in its bill of lading. Plaintiff under-

took to establish defendant's liability for its freight and charges, without regard to the bill of lading, by evidence of an implied contract to pay same from usage and a regular course of dealing.    There was a verdict and judgment for the plaintiff, and defendant appeals.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*John Chetwood*, for appellant.    *Wilcox, Adams & Macklin*, (*Geo. Bethune Adams*, of counsel,) for respondent.

DANIELS, J.    The verdict was recovered for charges advanced by the plaintiff, and for its own charges, in carrying cotton from Gainesville, in the state of Texas, to the city of New York, where it was delivered to the defendant. The cotton at the time of its delivery was not wholly laden upon either of the defendant's steamers, but was in part placed upon the wharf of the Inman Company, under its directions, to await the departure of the steamer Egypt at a later day.    While the cotton remained in that condition a fire took place, which destroyed it; and the plaintiff, insisting that the defendant had become liable to refund its advances and charges for its own carriage of the cotton, brought this action to recover that amount, with interest.    The cotton was received and carried under a bill of lading entered into by the agent of what was known as the Erie & North Shore Dispatch, by which the freight for its carriage was made divisible between the land carriers and the defendant; and in the course of its transit from Gainesville to Jersey City it passed over the lines of five or six different railway companies.    But by the bill of lading, which was entered into under the concurring authority of each of the companies, including the defendant, it was provided that the Erie & North Shore Dispatch and its connections should not be liable for a variety of injuries sustained by the cotton, and enumerated in the bill of lading; and it was then added: "Nor for loss or damage on any article or property whatever, by fire, or other casualty, while in transit, or while in deposit, or places of transshipment, or at depots or landings at all points of delivery."    This constituted an agreement not only with the owner or final consignee of the cotton, but also between the different carriers, and the defendant was entitled to the benefits of this exemption between itself and the plaintiff in this controversy. The language is broad and general, including all liability of the Erie & North Shore Dispatch as well as its connections.    The parties were at liberty to enter into this agreement as they did, and to exonerate each other, as between themselves, for liability from loss caused by fire and the other casualties referred to; and the contract in this manner made, including the defendant, as it did, (*Maghee* v. *Railroad, etc., Co.*, 45 N. Y. 514; *Manhattan Oil Co.* v. *Camden, etc., Transp. Co.*, 54 N. Y. 197,) relieved it from liability to the plaintiff for the loss of its charges and advances by the occurrence of this fire.    It was not contended that any different agreement was at any time expressly entered into concerning the liability of the defendant to pay these charges at or after the time when this cotton was received by it.    Neither could such a contention have been fairly made; for by the receipt of January 22, 1883, given by the receiving clerk of the defendant for the cotton, it was stated to be subject to the conditions contained in the through bills of lading, and that continued and perpetuated the application of this stipulation for exonerating each of the carriers from liability for loss by fire.

To avoid this result, and to subject the defendant to a legal liability for the freight and advanced charges, evidence was given for the purpose of establishing a usage or course of dealing between the land carriers and the steamship companies, by which the company could be held liable upon an implied agreement for such charges and advances; and the witnesses whose testimony was taken upon the trial were mainly examined as to this fact; but the testimony of neither of them went so far as to indicate the existence of a usage or custom rendering the steam-ship company liable for the preceding freight and

charges when the property was destroyed by fire upon the wharf, and before it was laden on board one of the steamers. Each of the witnesses to whose attention this subject was brought disclaimed having any knowledge of an instance in which this liability had been previously asserted, or was in fact conceded. But the general import of the testimony was that, after the produce was delivered to be placed on board the company's steamer, and it was in fact so laden, then a settlement would take place by which the steam-ship company would pay the advanced charges and the freight of the railway company carrying the produce to its point of final destination. That was the uniform course of business or usage. And it was stated, by one of the witnesses at least, that this was followed to enable the steam-ship company to protect itself by insurance against liability for the loss of the property laden on board of its steam-ship. The right of the plaintiff to maintain this action was in no respect advanced or maintained by this character of proof, for it was entirely inapplicable to the case. The only evidence of usage, if it could have been obtained, would be such as to prove to the satisfaction of the jury that the steam-ship company became liable to refund the preceding freight and charges upon its receipt or acceptance of the property; but there was no evidence in this case tending in any direction to prove that to be the fact. To render the defendant liable, a contract, expressed or implied, was required to be shown. No express contract was claimed to have been at any time made. Neither could any implied contract to make the payment be inferred from proof of this course of business dealing, for it had no tendency whatever to prove that the steam-ship company became liable for the freight and charges previously incurred in the transportation of the property by its mere delivery upon the wharf. A liability might well be inferred to refund the amount after the goods had been received on board the ship, but the evidence warranted no inference of the existence of the liability relied upon in this action, for the reason that no course of dealing had ever taken place in this business from which it could be inferred that the company receiving the goods upon the wharf only for ocean transportation intended to or did become liable for the preceding freight and advances. At the close of the proof on the part of the plaintiff a motion was made for the dismissal of the action on the insufficiency of the evidence, but that was denied, and the defendant's counsel excepted. At the close of all the evidence the court was asked to direct a verdict for the defendant, which was likewise denied, and an exception taken to the denial. The case was then submitted to the jury for them to consider whether there was such a usage° in this business as to prove the existence of a custom which would render the defendant liable to pay these charges and the plaintiff's freight. There was no evidence upon which the jury could be left at liberty to make that inquiry. The judgment and order should be reversed, and a new trial ordered, with costs to the defendant to abide the event.

VAN BRUNT, P. J. I concur. There was no competent evidence of any kind of a usage.