"McAdam, J.
The cause of action arose within the state of New York, the place fixed for performance of the contract (Burckle v. Eckhart, 3 N. Y., 132, approved in Hiller v. B. & M. R. R. Co., 70 N. Y., 225; Hibernia N. B’k v. Lacombe, 84 Ib., 378; Story on Conf. of Laws, § 280; Hilliard on Conf. of Laws, § 401), and this circumstance confers jurisdiction, though the plaintiff resides in New Jersey and the defendant is a foreign corporation. Code, § 1780; Flynn v. Central R. R. Co. of N. J., N. Y. Law Journal, March 23, 1891. The plaintiff, as transferee of the bill of lading, factor and trustee of an express trust, may maintain the action. Code, § 449; Ladd v. Arkell, 37 N. Y. Superior Ct. R., 35; Gorum v. Carey, 1 Abb. Pr., 285. The shipment consisted of goat skins, part of which were flint dried and the remainder dried by salt. They were in bales, protected by canvas covering, and were received by the defendant at Havre, according to the language of the bill of lading, ‘ in good order and well conditioned.’ This admission must be considered as referring to the exterior and apparent condition, and to the internal only so far as may be inferred from external appearances. Gowdy v. Lyon, 8 B. Mon., 112. The salty skins are apt to absorb moisture and become sweaty. The moisture *134 generates from the centre and spreads through the hales, and if. skins become moist and sweaty they eventually decompose, go to pieces, rot. The shipment was made June 8, 1889, and the skins arrived in London seven days afterwards, and at that time several of the bales were wet and slimy, a condition they could scarcely reach at so short an interval after shipment, if properly eared for. The skins were put upon the defendant’s steamer Canada,’ arrived in New York July 2, and were discharged on the 8th. The humidity at this time was unusually high, and the defendant claims that whatever damage accrued arose from inherent vice in the thing carried. No negligence was proved other than that which may be inferred from the facts stated, and the defendant affirmatively established that from the time the goods were received upon the ‘ Canada ’ at London every reasonable care was taken of them.
“ The defendant is a common carrier, running what is known as the ‘ National Line ’ of steamers, and the bill of lading was a through bill from Havre to New York. The defendant, as carrier, is responsible for every injury sustained by the goods, occasioned by any means whatever, except only the act of God, the king’s enemies, perils of the seas, or causes specially exempted by the bill of lading; subject, however, to the further qualification, that it is not liable for damage arising from evaporation, ordinary leakage, natural deterioration or inherent vice of the thing carried. Angell on Carriers, § 211; Warden v. Greer, 6 Watts R., 421; Blower v. Great W. R. Co., 7 L. R. C. P., 655; Nelson v. Woodruff, 66 U. S. R., 156; Story on Bailments, § 492a. The bill of lading expressly provides that the carrier shall not be liable for damage resulting from ‘ sweating, inherent deterioration, rain, spray, or perils of the sea.’ Upon the evidence, it is clear the defendant is not hable, unless it he for deviating from the terms of the contract, in shipping the goods to Southampton, and sending *135 them from thence by rail to London, instead of forwarding them by the steamer Wolf,’ direct to • London, as provided by the .bill of lading. If it was clear that the damage to the skins resulted from their own inherent characteristics, and that deviation had nothing whatever to do with their subsequently unpaired condition, the deviation might be regarded as of no consequence, but it is impossible to hold that the deviation may not have led to the wet and slimy condition of the skins which was discovered when they arrived at London. It is not for the court to determine whether the usual and customary route, or one prescribed by the consignor, is best suited to attain safety and dispatch. The consignor may select his own mode of conveyance, and has the right to require that the contract be fulfilled in the manner agreed. Dunseth v. Wade, 3 Ill., 285. If it is not so fulfilled, the carrier takes all the chances and assumes all the risks, and this is precisely the position in which the defendant placed itself by the deviation aforesaid. How or from what cause the skins became wet and slimy, as discovered at London, does not appear. Whether they would have fared better, if they had been forwarded by the Wolf ’ direct to London, is left to conjecture. The risk of this cannot be put upon the plaintiff, for the defendant took the chances and must now bear the loss. The contract was to carry the skins to London by the Wolf.’ This meant direct to London by water, and without change, if that was possible, and it was. The consignor was entitled to have his goods forwarded as he directed, and the failure of the defendant to perform its contract in this regard, made it an insurer and responsible for the loss. Hutchinson on Carriers, § 314. The rule is that if a carrier attempt to perform his contract in a manner different from his undertaking, he becomes an insurer for the absolute delivery of the goods, and cannot avail himself of any exceptions made in his behalf in the contract. Lawson *136 on Carriers, p. 182; Maghee v. Camden & A. R. R. T. Co., 45 N. Y., 514.
. “ The defendant, by its breach of contract, became a wrongdoer, and having, as a consequence, assumed the liability of an insurer, must make good the damage done. It is immaterial what the usage is among shipping men as to routes, as it cannot change the express terms of a contract, which may have been inserted for the very purpose of avoiding the usage which might have otherwise controlled. The defendant had the right to bind itself by contract to carry goods from or to a point beyond the terminus of its own line. Maghee v. Camden & A. R. R. T. Co., 45 N. Y., 514. The contract for through carriage is an entirety. Lawson on Carr., § 142. The bill of lading acknowledged that the skins were in good order when received, and this is prima facie evidence of the fact, sufficient to call upon the defendant to explain why they were wet and slimy when they arrived at London, Nelson v. Woodruff, 66 U. S. R., 156, and the explanation has not been satisfactorily given. The steamer ‘ Wolf ’ belonged to the London and South Western Railroad Company, and ran in connection with it from Southampton to Havre and return. There is no satisfactory evidence showing that the consignor knew this, or that the shipment to London was via Southampton, so as to have the bill of lading construed with reference to such knowledge and all it implied. The General Steam Navigation Company ran steamers from Havre to London direct, and the inference is that the consignor believed his goods were to take that course. Sending the goods to Southampton by water, and from thence to London by rail, and to the steamer by barge, involved extra handling of the skins, a thing not calculated to do them any good. Upon the entire proofs, the plaintiff is entitled to recover. The experts have given their opinion as to the amount of damages, but the legal measure now judicially assessed *137 is placed at $1,000, for which sum the plaintiff is entitled to judgment.
Lewis Sanders, for plaintiff.
John Chetwood, for defendant.
By the Court.—Freedman, P. J.
This action was, by consent, tried at special term without a jury. The controversy between the parties arose out of a shipment of skins which the defendant undertook to transport by the steamer Wolf ” from Havre to London and by the steamship “ Canada ” from London to New York. The court, upon the facts found, gave judgment in plaintiff’s favor for $1,000, and from this both parties appealed.
The facts as found, with the single exception of the amount of the damages, are sufficiently supported by the evidence, and the questions relating to the jurisdiction of this court, the right of the plaintiff to maintain the action, the construction of the bill of lading, the duty of the defendant under said bill of lading, the deviation and breach of duty by the defendant, and the liability of the defendant in consequence thereof, were so fully discussed by the trial judge in the learned opinion rendered by him, that no further elaboration is necessary here. I entirely agree with the views expressed and the conclusions reached upon these questions. In determining the amount of damages, however, the learned judge erred. But the error, as will be presently shown, was in favor of the defendant and against the plaintiff. Defendant’s exception to the exclusion of evidence presents no ground for reversal. Upon defendant’s appeal therefore the judgment should be affirmed*
The appeal by the plaintiff is upon the sole ground that the damages awarded are inadequate. The claim of the plaintiff is for damages by reason of the delivery *138 to him of the goods in a damaged condition. The cause of the damage was found in defendant’s deviation from the terms of the contract in carrying the goods to Southampton and forwarding them from there by rail London, instead of carrying them by the steamer “ Wolf ” directly to London, as provided by the bill of lading. The defendant, therefore, became an insurer and cannot invoke the benefit of any exception made in its behalf in the contract. Maghee v. Camden & Amboy R. R. Transportation Co., 45 N. Y., 514. In such a case the damages, as a general rule, are to be measured according to the value of the goods at the place of destination, at the time they should have been delivered pursuant to the contract, and in the condition the carrier undertook to deliver them, less the price to be paid for his services. Sturgess v. Bissell 46 N. Y., 462; Ward v. N. Y. C. R. R. Co., 47 Ib., 29; Harris v. Panama R. R. Co., 36 N. Y. Superior Ct. R., 373; affirmed 58 N. Y., 660; Sherman v. Hudson River R. R. Co., 64 N. Y., 254.
The defendant offered no testimony whatever as to the value of the goods or the amount of damage thereto, while the plaintiff’s witnesses all united in testifying that, at the time the skins were received in New York, their market value, if sound, was 07.50 per dozen ; that there were 4,856 damaged skins, and that the damage to them was about 50 per cent, of the market value of sound skins. At that rate the total amount of damage was 01,517.50. It appeared, however, that the plaintiff, before charging the defendant with the actual amount of the loss, undertook to lessen the damage by spending some labor upon the damaged skins to make them more merchantable and to prevent further decay, and that as the result he #vas able to sell them, and did sell them, at a figure which made the amount of actual loss several hundred dollars less than 01,517.50, and several hundred dollars higher than the sum of 01,000 actually *139 awarded. Under the special circumstances of this case I tliinV the defendant should not be charged with more than the actual loss, while, on the other hand, the plaintiff must be allowed the expenses incurred for reducing the loss below the amount which under ordinary circumstances the genéral rule would fix. The precise figures do not appear to have been given, but from the general statements that were made, it sufficiently appears that the actual loss considerably exceeded the sum of $1,000 which was awarded.
Upon plaintiff’s appeal, therefore, a new trial should be ordered.
The judgment should be reversed and a new trial ordered, with costs to the plaintiff to abide the event.
Gildersleeve, J., concurred.