FRANK McKAHAN & another *vs.* AMERICAN EXPRESS COMPANY.

Suffolk.    December 7, 1910. — May 16, 1911.*

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Carrier*, Of goods or animals. *Damages*, Limitation. *Conversion.* *Contract*, Implied in law. *Express Company.*

Where a carrier of goods or animals makes a material departure from the method of transportation, this, like a deviation from the designated route, avoids the express contract of carriage and all provisions as to limitation of damage contained in it, at least at the election of the shipper.

Where an express company makes a contract in writing for the transportation of a certain number of horses from a place in Indiana to a city in this Commonwealth in a time not to exceed thirty-six hours, and the shipper agrees that an attendant shall accompany and take charge of the horses, the express company furnishing free transportation for the attendant, and the shipper by the same contract declares the value of the horses to be $75 each and agrees that the express company shall in no event be liable for damages for injury to any of the horses in excess of the sum declared by the shipper to be the value thereof, if the express company during the transportation separates the horses from their attendant furnished by the shipper, against the attendant's objection, and in consequence the horses are injured by detention in the cars for a period of forty-four hours without being fed or watered, the carrier's departure from the agreed method of transportation displaces the contract of carriage and releases the shipper from all limitations upon the carrier's liability which he agreed to therein, so that he is entitled to recover from the carrier full compensation for his loss, it here not being necessary to decide whether his proper remedy is in tort for the conversion or upon an implied contract arising from the fact of shipment.

LORING, J.    This is an action for damages to horses carried by the defendant from La Fontaine, Indiana, to Boston in this

---

* The opinion in this case was withdrawn on an application for a rehearing. This was denied on June 19, 1911, when the opinion was returned to the Reporter.

Commonwealth. The plaintiffs had signed an agreement extending to thirty-six hours the time during which the horses could be carried without unloading. But they were carried for forty-four hours and the damage done to them was caused by that. The defendant admitted its liability and defended on the ground that by the terms of its contract with the plaintiffs it was liable for $12.50 only.*

It is stated on the face of the contract that the shipper was offered alternative rates to be charged for the carriage of the horses proportioned to their value (such value to be fixed and declared by the shipper), which rates were stated in the tariff also stated on the face of the contract. It is stated further on the face of the contract that for the purpose of availing themselves of the alternative rates to be charged for the carriage of the horses here in question the plaintiffs had declared the value of them to be $75 each. Not only did it appear that the rate was based on each horse being valued at $75, but in addition the following clause was contained in the agreement: "The shipper hereby releases and discharges the express company from all liability for delay, injuries to or loss of said animals from any

---

* In the Superior Court the case was tried before *Harris*, J. The plaintiffs made an offer of proof of a statement of a horse dealer, who had examined the horses, showing that seven of the plaintiffs' twenty-eight horses transported by the defendant were injured, and that these seven horses sold for $501 less than they would have sold for if uninjured. By this statement it appeared that only one of the horses sold for less than $75, and that he sold for $62.50. The defendant objected to this offer of proof and objected to the introduction of any evidence for the purpose of assessing damages excepting such as tended to show the amount that each horse sold for less than the amount of $75, the defendant contending that under the contract of carriage the declaration of the value of the horses at $75 limited the liability of the defendant to the difference between the value declared in that contract and the amount under the declared value for which any of the horses were sold, so that the only damage which the plaintiffs could recover was $12.50. The plaintiffs, among other requests, asked the judge to rule that " If the contract between the plaintiffs and the defendant was broken by the defendant, by separating the horses from their attendant, without the consent of the attendant, then all the clauses in the contract tending to limit the defendant's full liability as a common carrier become inoperative and ineffectual." By agreement of the parties the judge ordered a verdict for the plaintiffs upon the declaration and reported the case, reserving the question of damages for determination by this court.

cause whatever, unless such delay, injury or loss shall be caused by the negligence of the agents or employees of the express company, and in such event the express company shall be liable only to the extent of actual damage to the animal or animals injured, which shall in no event exceed the sum herein declared by the shipper to be the value thereof; and for the purpose of ascertaining or assessing such damage, whether the same be a total or a partial loss, the value of said animals as herein declared by the shipper shall be conclusively deemed to be the true value thereof." It was provided by the contract that "The shipper agrees . . . to cause the necessary attendants to accompany and take charge of said animals, the express company furnishing free transportation for the attendants who have signed the attendant's contract appended hereto."

When the car containing the horses in question arrived at Buffalo the agent of the express company told the attendant that the train on which the horses naturally would go to Albany was "heavily loaded," and that they wished to put the car on the "Limited" which was "running light that day." The defendant's agent also told the attendant that if that was done he, the attendant, would have to pay a fare to Albany and that at Albany the car containing the horses would be put on the usual train for Boston. The attendant said that he would not pay the extra fare and insisted upon the car going on the usual train. Against his protest and without his knowledge the car was put on the "limited" train and he took the usual train. The usual train was late in getting into Albany and had not arrived when the time came for the train from Albany to Boston to start. Although the attendant had not arrived the horses were sent forward on the usual train to Boston and arrived at Boston in the night at an hour not stated in the report. The attendant arrived in Boston at about five o'clock in the morning and found the horses still in the car. He succeeded in having them unloaded between seven and eight o'clock. Although the report does not state the hour when the horses arrived, it does appear that they were unloaded eight hours after the expiration of the thirty-six hours to which the plaintiffs had extended the time for their carriage without unloading. The plaintiffs' evidence showed "that the cause of the injury to the horses was their

detention in the cars without being fed or watered from the time they left La Fontaine, Indiana, between eleven and twelve o'clock on Saturday until the following Monday morning," and this must be taken to have been admitted by the defendant's admission of its liability.

It is settled as matter of authority that a deviation by a carrier from the route described in a contract of shipment makes him liable as an insurer of the goods shipped although the contract of shipment exempts him from liability under the circumstances (apart from the deviation) under which the goods were lost or damaged. *Waltham Manuf. Co.* v. *New York & Texas Steamship Co.* 204 Mass. 253. *Davis* v. *Garrett*, 6 Bing. 716. *Joseph Thorley Limited* v. *Orchis Steamship Co.* [1907] 1 K. B. 660. *Hostetter* v. *Park*, 137 U. S. 30, 40. *Constable* v. *National Steamship Co.* 154 U. S. 51, 66. *Maghee* v. *Camden & Amboy Railroad Transportation Co.* 45 N. Y. 514. *Hand* v. *Baynes*, 4 Whart. 204. *Crosby* v. *Fitch*, 12 Conn. 410. *Georgia Railroad* v. *Cole*, 68 Ga. 623. *Phillips* v. *Brigham, Kelly & Co.* 26 Ga. 617.

It is further settled as matter of authority that the same is true where there has been a departure from the method (including mode and manner) of transportation agreed upon.     In *Goodrich* v. *Thompson*, 44 N. Y. 324, another steamship was substituted for the one agreed upon.     See also in this connection *Robertson* v. *National Steamship Co.* 139 N. Y. 416, 419 ; *Dunseth* v. *Wade*, 2 Scam. 285, 289.     The goods in question in *Robinson Bros. & Gifford* v. *Merchants' Despatch Transportation Co.* 45 Ia. 470, and in *Stewart* v. *Merchants' Despatch Transportation Co.* 47 Ia. 229, were shipped to be carried through in the same car, but were unloaded and put into a warehouse during transit and there burned.     The carrier was held liable although by the contract he was exempt from loss by fire.     *Galveston, Houston & Henderson Railroad* v. *Allison*, 59 Tex. 193, was the case of a similar shipment.     There the goods shipped were melons injured by heat and decay from which the contract exempted the carrier from liability.     But the melons had been transferred into other cars, and for that reason the carrier was held liable.     In *Merrick* v. *Webster*, 3 Mich. 268, the goods were shipped to be carried "by sail on the lake" under a contract which exempted the carrier

from loss from all dangers of the lakes. The goods were carried on a steamship, were lost in a collision and the carrier was held liable. In *Hunnewell* v. *Taber*, 2 Sprague, 1, the goods shipped consisted of oil in casks. The carrier agreed that the oil was "to be wet twice a week," and the shipper agreed that the carrier should "not [be] accountable for leakage." The oil not having been wet it was held that he was liable. For a similar case see *Grand Trunk Railway* v. *Fitzgerald*, 5 Canada, S. C. 204, 208. And see in this connection *Hastings* v. *Pepper*, 11 Pick. 41.

This principle has been applied in England in two cases (*Sleat* v. *Fagg*, 5 B. & Ald. 342; *Balian & Sons* v. *Joly, Victoria, & Co.* 6 T. L. R. 345) to make a carrier liable for the actual value of the goods shipped in spite of a stipulation in his contract with the shipper that the value should not be taken to exceed a sum therein named. *Sleat* v. *Fagg* was a case where the goods were shipped to go by one mail coach and in fact were sent by another. *Balian & Sons* v. *Joly, Victoria, & Co.* was a case where goods shipped for carriage from Lagos in Thessaly to London in the Mabel were in fact carried to Smyrna in the Mabel, there transferred to a Cunard steamship, carried in her to Liverpool and from Liverpool to London by rail.

The simplest class of cases, in which it has been held that a deviation from route or a departure from method of transportation prevents the carrier from setting up a clause in the contract between him and the shipper exempting him from liability under the circumstances under which the goods were lost or damaged, are those where the deviation or departure was the proximate cause of the loss. Such was the case in *Hand* v. *Baynes*, 4 Whart. 204, where the goods were shipped from Philadelphia to Baltimore by canal and were lost at sea outside the capes; and in *Hunnewell* v. *Taber*, 2 Sprague, 1, where the casks of oil leaked because not wet down as agreed. The principle has also been applied in cases where it was not possible to say that the deviation or departure was the proximate cause of the loss but the loss occurred during the continuance of the deviation or departure. *Sleat* v. *Fagg*, 5 B. & Ald. 342, is an example of a case of this class. But the principle was applied in *Joseph Thorley Limited* v. *Orchis Steamship Co.* [1907] 1 K. B. 660, in

a case where the deviation was not the proximate cause of the damage done to the goods shipped and where it did not occur while the deviation was in effect. In that case the deviation had come to an end before the damage was done and there was no connection between the deviation and the damage. The goods in question in *Joseph Thorley Limited* v. *Orchis Steamship Co.* were locust beans carried in the defendant's steamer from Limassol to London. While the beans were being unloaded in London they were damaged by being mixed with a poisonous earth, called terra umber, which had been carried in the steamship as ballast. By the terms of the bill of lading the defendant was exempted from all liability for negligence (*inter alia*) in unloading the beans. England is a jurisdiction in which such a contract is valid, and it was assumed that the contract in question in that case was valid. But the defendant was held liable because in proceeding from Limassol to London there had been a deviation from the route described in the bill of lading. The route described was from Limassol to London, while the steamship in fact proceeded from Limassol to a port in Asia Minor, thence to a place in Palestine, thence to Malta, and from there to London. The case was decided on the principle suggested by the Master of the Rolls (Lord Esher) in *Balian & Sons* v. *Joly, Victoria, & Co.* 6 T. L. R. 345. In that case Lord Esher, after stating that it was not necessary to lay down all the consequences of a deviation by a carrier from the voyage contracted for, said : " It might be that the true view was that the deviation made the voyage actually carried out a different voyage from beginning to end from that to which the bill of lading applied, and that therefore the whole bill of lading was gone. If that was so it might be that the fact of shipment would give certain rights to the ship owner and to the shipper. It might be that what was agreed upon before the bill of lading would remain. Therefore the freight would remain. The ship owner as a carrier would have a lien for the freight. It was not necessary, however, to say whether that was so, though he inclined to take that view." *Joseph Thorley Limited* v. *Orchis Steamship Co.* was decided on the principle established by the case of *Balian & Sons* v. *Joly, Victoria, & Co.* 6 T. L. R. 345. It is not altogether clear from the judgments delivered in that case by Col-

lins, M. R., and Fletcher Moulton, L. J., whether they intended to hold that the deviation had the effect of displacing the whole contract or that the carrier had incapacitated himself from setting up the exemption clause because the 'duty not to deviate was a condition precedent to that clause as a contract by the shipper. The latter view is supported by the decision in *Pavitt* v. *Lehigh Valley Railroad*, 153 Penn. St. 302. In that case it was held that the carrier could set up a failure by the plaintiff to make a claim within the time specified in the bill of lading, although there had been a deviation. But we are of opinion that the principle put forward by Lord Esher in *Balian & Sons* v. *Joly, Victoria, & Co.* is the true one and that the effect of a deviation is to do away with the express contract altogether, — at least at the election of the shipper. In other words the breach of the express contract of shipment (which takes place when there is a deviation from route or departure from mode, method or manner of transportation) is such a breach on the part of the carrier that the shipper can rescind the express contract of shipment on the principle acted upon in *Amos* v. *Oakley*, 131 Mass. 413, *Brown* v. *Woodbury*, 183 Mass. 279, and *Long* v. *Athol*, 196 Mass. 497.

It is not necessary to decide in the case at bar on what ground the shipper is to recover when the express contract has been thus wholly displaced. It was suggested by Lord Esher in *Balian & Sons* v. *Joly, Victoria, & Co.* that in such a case the shipper recovered on an implied contract arising out of the fact of shipment. On the other hand it was suggested by Holroyd, J., in *Sleat* v. *Fagg*, 5 B. & Ald. 342, 349, that in such a case the carrier had been guilty of a conversion of the goods and was liable in trover, but that that was not his only remedy. · Decisions to the effect that in such a case the carrier is liable in trover for a conversion were made in *Georgia Railroad* v. *Cole*, 68 Ga. 623, and *Phillips* v. *Brigham, Kelly & Co.* 26 Ga. 617. The decision in the last case was put on the authority of *Wheelock* v. *Wheelwright*, 5 Mass. 104, where it was held that, if the defendant hires a horse to go to A and drives him to B, he is guilty of conversion. The defendant has not put forward the claim that if the whole original contract in the case at bar was displaced by the departure from the method of transportation

agreed upon, the plaintiffs ought to pay the full rate and not the alternative rate based upon each horse being valued at $75. Therefore it is not necessary to decide this question.

. In the case at bar the shipper's agreement that the horses were to be valued at $75 each was plainly based upon the risks incident to the transportation agreed upon, namely, transportation of the horses in care of an attendant. The breach by the carrier of its agreement to transport the horses in the care of an attendant was the proximate cause of the loss which occurred; and this case could be decided on the ground that it could not have been the intention of the parties to the original contract of shipment that the shipper should be held to his agreement as to the sum at which the horses were to be taken in case the carrier did not transport them in care of an attendant. But we are of opinion that the rule as to deviation from route and departure from method of transportation rests upon the broader ground that in such case the original contract is wholly displaced, at least at the election of the shipper, and we prefer to place our decision on that doctrine.  ·

We construe the report to submit the question to us without regard to the pleadings. The plaintiffs seek to recover damage done to the horses and not the value of them. Even if trover is the shipper's only remedy, the amount to which the plaintiffs would be entitled in the case at bar is the value of the horses when converted less their value when re-delivered to the plaintiffs; and the same result is reached if a new contract is brought into being, implied from the fact of shipment.

By the terms of the report the entry must be judgment for the plaintiffs for $501 with interest from the date of the writ.

*So ordered.*

The case was argued at the bar in December, 1910, before *Knowlton*, C. J., *Morton, Loring, Sheldon,* & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*E. R. Anderson*, for the plaintiffs.
*A. M. Pinkham*, for the defendant.