GRAVES and others vs. SMITH and another.

GRAVES et al.
v.
SMITH et al.

Where the only issue was whether the defendants, as warehousemen and for-warders, had been instructed by the plaintiffs to ship certain flour by a railway line, and the plaintiffs' witnesses testified that the agent of the plaintiffs went to the office of the defendants and told them that he had contracted with a certain railway company to carry the flour in question, and had given the company an order for it, and that the agents of the defendants answered "it was all right," it was not erroneous for the court to instruct the jury that if they believed the notice was given as testified to, they should find for the plaintiffs. Such information necessarily imported that the defendants were not to send the flour by propeller around the lakes, and that they were to deliver it on the order.

If, after such notice was given, the defendants shipped the flour by a propeller around the lakes, and it was lost, that was a conversion.

Where a complaint avers that the defendants were warehousemen and forwarders, and that the plaintiffs delivered flour to them and instructed them to forward it by a certain railway line, which they undertook to do, such facts import a hiring, and it could not be assumed that the agreement was *nudum pactum.*

But an action for the actual conversion of the property is not founded upon negligence, and if a conversion is shown, may be maintained, whether the bailee was liable for ordinary or only for gross neglect.

APPEAL from the County Court of *Milwaukee* County. The case is stated in the opinion of the court. Judgment for the plaintiffs.

*Brown & Ogden,* for appellants.

*Smith & Salomon,* for respondents.

*By the Court,* PAINE, J. We can discover no error in the rulings of the court below in this case. The action was brought to recover the value of a quantity of flour, sent by the plaintiffs to the defendants as warehousemen in Milwaukee, consigned to H. McGraw & Son, McGrawville, New York. The complaint alleges that after the flour had been so received by the defendants, and while it was in their possession, the plaintiffs, through a properly authorized agent, instructed them to forward it by the Detroit and Milwaukee railway; but that, in violation of such instructions, they sent it by a propeller around the lakes, whereby it was lost. The answer admits the receipt of the flour, admits that it was sent by a propeller, averring that to be the usual mode,

May 15.

January Term,
1861.

GRAVES et al.
v.
SMITH et al.

and denies that the plaintiffs ever instructed the defendants to send it by the Detroit and Milwaukee railway. The only issue made was, therefore, whether this instruction was given; and this is conceded in the brief of the appellants' counsel. The court fairly submitted this question to the jury, telling them that if the defendants "received no instructions in respect to the flour, they were at liberty to use their discretion in shipping by the usual or best route; but if they had specific directions, they were bound to follow those directions." That this is correct law there is no question. But the court proceeded to tell the jury that if they found "that the notice was given as testified, and understood by the clerks of the defendants, then the plaintiffs were not to lose by the inadvertence or carelessness of the clerks," and they should find for the plaintiffs, &c. The principal objection relied on by the appellants' counsel is to this part of the charge. They say it assumes that the notice testified to was sufficient to amount to an instruction to the defendants to send the flour by the Detroit and Milwaukee railway, which they deny. It becomes necessary, therefore, to look at the evidence upon this point, to see whether it warranted the instruction given. The testimony was that one Wilbur was sent by one of the plaintiffs to make arrangements for shipping the flour, that he contracted with the railway company to carry it, and gave them an order for it. He then, not knowing the defendants, took one Holmes with him, who did know them, for the purpose of notifying the right parties. Wilbur testified that there were persons doing business in the office; that "Holmes called for the way bills or books, which were handed him; that Holmes then told them who Wilbur was, and that he had contracted with the Detroit & Milwaukee Railroad to take that McGraw flour that way, and had given an order for it; and that they would call for it;" that the "gentlemen said 'very well,' or something to that effect." Holmes testified that he went there with Wilbur, who requested him to go and notify the right parties, and that he did notify Mr. David Smith and Mr. Peck, and that one of them said "it was all right." He says he introduced Mr. Wilbur as coming from Mr.

Graves about the McGrawville flour, and told them that the order had been given to the Detroit & Milwaukee Railroad for it. He says he does not think he told them it would be called for, but that was implied.

The evidence offered by the defendants had a tendency to show that these conversations did not take place. But whether they did or not, was fairly left to the jury, to whom it properly belonged. And all that we have to determine is, whether, assuming that they did take place, they amount to a direction to the defendants to deliver the flour to the railway company. Of this we have no doubt. Nobody of ordinary intelligence could understand it otherwise. The witness Holmes was right in saying that when he told them an order for the flour had been given to the railway company, it was implied that they would call for it. It was also clearly implied that when called for it should be delivered. There could have been no other possible motive for giving the notice, and no other construction could have been placed on it by the defendants. The defendants have in their possession, as warehousemen, the flour of the plaintiffs, subject to the plaintiffs' directions as to shipping. The plaintiffs notify them that they have contracted with a particular line to carry the flour, and given an order for it, and the defendants say it is all right. Is it possible, after such a conversation, that the defendants could send the flour in another direction upon the pretense that they supposed that they still had a discretion to send it by whatever route they pleased? We think not, and that defendants' agents who testified would not claim exemption on that ground. They claimed that no such conversation as was testified to by the plaintiffs' witnesses ever took place. But their testimony implies that if it ever had taken place, and they had been made to understand the language used, they would have made no question about its being a direction about the flour. We think, therefore, there was no error in the charge in this respect.

But it is further claimed that inasmuch as the complaint did not aver that the defendants acted for hire, it is to be assumed that they were to charge nothing, and that they were

therefore liable only for gross negligence. And it is then said that it should have been submitted to the jury to determine whether there was gross negligence. We do not think however that it can be assumed, on the allegations of the complaint, that the defendants were to have no pay. It avers that they were warehousemen and forwarding merchants, exercising that business, and that being so, the plaintiffs caused the flour to be delivered to them, and that they then undertook to forward it by the railway line, upon the request and direction of the plaintiffs. That being so, they would clearly have been entitled to their reasonable charges as warehousemen and forwarding merchants. It is probably very seldom that express agreements are made with respect to the charges of such persons. But when any one employs them in the usual course of their business, that imports a hiring, and that they are to be paid. POWELL, J., in *Coggs vs. Bernard*, Ld. Raymond, 909, (1 Smith's Leading Cases, 284), says: "The doubt is because it is not mentioned in the declaration that the defendant had anything for his pains, nor that he was a common porter, which of itself imports a hire, and that he is to be paid for his pains." So in *Dartnall vs. Howard*, 10 E. C. L., 351, it is clearly implied that if it had been averred that the defendant had been employed as an attorney, or as exercising any business which made it his absolute duty to use ordinary care and skill, the count would have been good although not saying expressly that he was to be paid. Now it is obvious that warehousemen exercise such a business. This is assumed by the defendants, and is relied on as a defense. They aver in their answer, after admitting the receipt of the flour, "that in the ordinary and customary course of their business, they were obliged to forward the same to its destination," &c., and that "as they were bound to do," they did so forward it. We think, therefore, that the facts stated in the complaint import a hiring of the defendants, and that they were entitled to their reasonable charges as warehousemen and forwarding merchants. So that if the action were brought for negligence, it could not be assumed that their agreement was without consideration.

But the true answer to this objection is, that the action is

not brought for negligently doing what they undertook to do, but for doing something entirely different, which amounted to a conversion of the property. And with this view it was immaterial whether they were liable for gross or for ordinary negligence. A bailee liable only for gross negligence, is still liable for an actual conversion of the property. And if the defendants were employed with directions to send the flour by the railway line, it was undoubtedly a conversion for them to send it around the lakes.

For these reasons, we think there was no error; and the judgment is affirmed, with costs.