BROWN & HAYWOOD COMPANY v. PENNSYLVANIA COMPANY.[1]

January 28, 1896.

Nos. 9685—(286).

Carrier of Goods—Connecting Lines—Deviation—Liability for Injuries.

A common carrier received a shipment of goods, to be carried to a point beyond its own line, with directions to deliver them to certain connecting carriers to be carried to their destination. At the same time the shipper made an agreement with the last connecting carrier to have the car containing the goods stopped at two intermediate points on its line, and certain portions of the goods delivered at each point; the balance to be carried to the point of destination, to which the goods were billed by the initial carrier. The initial carrier had no knowledge of this agreement, and wrongfully sent the goods by a different connecting carrier, whose lines did not reach the place of destination, but did reach one of said intermediate points, to which it brought the

[1] Reported in 65 N. W. 961.

goods, and was proceeding to forward the whole of them to the place to which they were so billed, when plaintiff disclosed to it his contract to have the goods distributed to the three points, and demanded that it be complied with. Before complying with the same, this carrier compelled him then and there to pay the whole freight for the whole route, and thereupon delivered him the goods destined to that point, and undertook at its own cost to carry to each of the other points the portion of the goods destined to such point. In doing so, one package of the goods was broken and destroyed. In a suit by the shipper against the initial carrier for the loss, *held*, the initial carrier became, by its wrongful act of diverting the goods from the designated route, an insurer of their safe delivery at the three places of destination, though two of those places were never disclosed to it.

Same.

*Held*, further, the transaction between the shipper and the carrier, to whom the goods were wrongfully delivered, did not amount to a delivery then and there to the shipper, so as to relieve the initial carrier from his liability.

Settlement—Consideration.

Other unimportant points disposed of.

Appeal by defendant from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Affirmed.

Action in the district court for Hennepin county. The case was tried before Elliott, J., who found in favor of plaintiff in the sum of $592.80 with interest from December 1, 1892, less $165. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Flandrau, Squires & Cutcheon*, for appellant.

*L. L. Longbrake*, for respondent.

CANTY, J. The plaintiff, a corporation, delivered a car load of glass to the defendant railway company at Tarentum, Pennsylvania, billed to Snohomish, in the state of Washington, via the Chicago, St. Paul & Kansas City Railway and the Northern Pacific Railroad, and a bill of lading was issued by defendant accordingly. The defendant carried the car of glass over its own road, but wrongfully, by mistake or otherwise, sent the same over the Union Pacific Railway, instead of over the Northern Pacific Railroad.

A certain portion of the glass was for a customer of plaintiff at

Tacoma, Washington, another certain portion for customers at Seattle, and the balance for a customer at Snohomish. If the car had been sent over the Northern Pacific Railroad, it would have arrived first at Tacoma, next at Seattle, and last at Snohomish; and before the car was shipped, plaintiff had made arrangements with the Northern Pacific Railroad Company to stop the car at each of these places, respectively, and permit the glass destined for that place to be there unloaded and delivered, the car then to proceed to the next place; but none of these facts were stated in the bill of lading or known to defendant. The Union Pacific Railway Company did not connect by rail with any of these points. The terminus of its railway line was at Portland, Oregon.

When the car arrived at that point, the glass was shipped by the last named railway company to Seattle, by water, on its own vessel, to be there transshipped over the Northern Pacific Railroad Company to Snohomish. But when the glass arrived at Seattle, and was placed on its wharf by the Union Pacific Railway Company, one Louderback, a broker who had negotiated the sale of the glass destined for Seattle, informed its agent of the wrongful deviation in the shipment, that all of the glass was not destined for Snohomish, of the points to which the different portions of it were destined, and the arrangements made with the Northern Pacific Railroad Company to distribute it to these different points. Louderback also informed the Union Pacific Railway Company of the fact that the glass was at this time some 20 days overdue, and of the pressing necessity for the prompt delivery of the different portions of it to the different points of destination, respectively, to fulfill contracts, some of which were then in default, and others would be if prompt action was not taken. He also tried to get possession of the glass destined for Seattle, to fulfill the contracts made by him, but the Union Pacific Railway Company refused to deliver the same to him unless he paid all the freight due on all the glass over the whole route from Tarentum, amounting to $533.80. After some further parleying, Louderback agreed to pay this freight, and the Union Pacific Railway Company agreed to deliver to him there the glass destined for Seattle, and at its own expense transport to Snohomish the glass destined for that point,

and to Tacoma the glass destined for that point. The boats being too busy to carry the latter glass to Tacoma, the Union Pacific Railway Company undertook to have it transported by rail over the Northern Pacific Railroad to that point. In order to do so, it was necessary to have the glass transferred on a dray from the wharf to the depot of the Northern Pacific Railroad Company. The Union Pacific Railway Company employed one Heath, a drayman at Seattle, to do this, and in doing so he permitted one of the cases of plate glass to fall against the wheel of the dray, whereby all of that package of glass was broken and rendered worthless.

This action is brought against the defendant for damages for loss of the glass by reason of its wrongful acts in disobeying directions as to the connecting line over which the glass should be sent. The plaintiff recovered in the court below, and from an order denying a new trial, defendant appeals.

Until after the glass was broken, neither plaintiff nor defendant had any knowledge of the new arrangements that were made by Louderback and the Union Pacific Railway Company for the distribution of the glass. Louderback was not the agent of the plaintiff, and had no authority from plaintiff to make these arrangements, but did it on his own responsibility, for the purpose of protecting the good will of his own business. But plaintiff subsequently repaid him the freight which he so paid, and it is contended by appellant that plaintiff fully ratified his acts by so repaying him, and adopting the benefit of those acts. For the purposes of this case we will concede, without deciding, that this contention is correct, and that plaintiff has ratified those acts, and is as much bound by them as if Louderback had full original authority from it to make these new arrangements for the distribution of the glass. We will now consider the next step in appellant's position.

Appellant concedes that, by misdirecting the goods beyond the end of its own line, the defendant was liable for conversion, and was therefore an insurer of the safe arrival of the goods at their destination, all of which is undoubtedly good law. But appellant further contends that plaintiff by its own act has released defendant from liability, that the new arrangements made with the Union

Pacific Railway Company for the distribution of the goods "operated, in law, as a delivery of the goods by the Pennsylvania Company to the Brown & Haywood Company." Counsel argue: "The contract between the plaintiff and the defendant provided that the goods should be carried to Snohomish, and no obligation rested upon defendant or the Union Pacific Company to deliver any of the goods at any point other than Snohomish. * * * That contract required the defendant to deliver plaintiff's goods at Snohomish, but not elsewhere, and required the plaintiff to receive the goods at Snohomish, not elsewhere, and thereupon, but not otherwise, to pay defendant the amount of freight charges agreed upon. The Union Pacific Railway Company had not, nor had any of its representatives in Seattle, any authority to alter this contract in any particular."

The fallacy of counsel's position consists in assuming that there was, in fact, any contract between the plaintiff and defendant to carry the goods to Snohomish. Defendant made no such contract. It merely agreed to carry the goods over its own line, and deliver them to the next designated carrier, with proper directions for their further carriage. There its contract and its duties ended. But this contract, made with defendant, was not the whole of plaintiff's contract. It had made another contract with the Northern Pacific Railroad Company to distribute the goods at the three points aforesaid. It is true that defendant had no knowledge of the latter contract, but the latter contract did not concern defendant, or in any manner increase its liability, if it had rightfully performed its own contract; and we cannot see that plaintiff was under any obligation to inform defendant of a matter which did not concern it.

When plaintiff discovered the wrongful deviation of its goods by defendant, it disclosed to the carrier in whose possession it found its goods the whole contract, and demanded that the goods be distributed and delivered accordingly. We cannot see but that it was both the right and duty of plaintiff, as between it and defendant, to disclose its additional contract to the Union Pacific Railway Company, and demand that the different portions of the goods be carried to their respective destinations as required by

that contract. This the latter carrier refused to do, except on payment of the whole freight in advance. The payment of this freight, under the circumstances, can hardly be considered, as between plaintiff and defendant, a voluntary payment, which would ratify the wrongful act of defendant, but rather a payment under duress of plaintiff's goods, which it needed to fulfill its contracts. We cannot see that plaintiff has done anything more, at any stage of the transaction, than insist that its whole contract be carried out, except so far as it submitted to what was, as between it and defendant, an unlawful exaction of the payment of freight at Seattle, partly in advance, and it seems to us that this unlawful exaction should give the defendant no advantage.

Louderback engaged Heath to carry this glass from the wharf to the Northern Pacific depot, but it appears that, in doing so, he was acting as the agent of the Union Pacific Railway Company, not as the agent of plaintiff. Defendant requested plaintiff to make every effort to collect the amount of the claim from the drayman, Heath, and give defendant credit for any amount so collected. Plaintiff accordingly brought action against Heath in Washington, recovered a judgment for $640, and collected thereon $165.

2. Appellant contends that plaintiff's claim against defendant was satisfied by a settlement with Heath, whereby he was to pay $200 on this judgment in settlement in full; but we are of the opinion that the evidence does not warrant the claim that any such settlement was made with Heath, or that, if made, there was any consideration to support it or make it binding.

This disposes of the case, and the order appealed from is affirmed.