Dennis E. Lynch and Jay L. Branch, Plaintiffs, *v.* New York Central and Hudson River Railroad Company, Defendant.

(County Court, Niagara County, March, 1915.)

Carriers — language of contract relieving carrier from liability for negligence — contents of bill of lading — action to recover for damages caused by improperly iced cars while in transit — Hepburn Act (Interstate Commerce Act, § 20).

The language of a contract relieving a carrier from liability for its negligence must be explicit and the intention clear; general words will not suffice.

By the Carmack amendment to the Hepburn Act (Interstate Commerce Act, section 20) congress has taken under control the subject of the liability of a common carrier for loss or damage to an interstate shipment and the validity of any stipulation in a contract for such a shipment is determinable by the federal

and state courts under the general common law as pronounced by the federal courts.

A shipment from one point in a state to another point in the same state, where the goods in transit pass through another state, is interstate commerce.

A contract with a common carrier for the shipment of fruit which contemplates a route wholly within the state of New York is an intrastate contract.

A provision in the contract for the re-icing of perishable fruit and naming the points at which such re-icing is to take place is very substantial and important, and where there is a deviation from the agreed route and the fruit was re-iced at only one of the designated points the carrier becomes an insurer and may not avail himself of any exception in the contract.

A contract of shipment provided for the carriage of fruit from Appleton, N. Y. to Desbrosses street station, New York city, and contained the following stipulation: " Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable," and there was also written on the bill of lading " Re-ice at Kendall and Karner." Each of the cars was re-iced at Kendall and then transported to Frankfort, N. Y., and there re-iced and thence moved over the West Shore division of defendant's line to Weehawken and forwarded to destination. Certain of the fruit on arrival had deteriorated. Defendant's agent at Desbrosses street station was immediately verbally notified of the bad condition of the fruit on arrival and its agent at Appleton, N. Y., was within four months likewise verbally notified. There was no written claim for the loss or damage made in writing to defendant at the point of delivery or at the point of origin within four months after delivery of the property. In an action to recover for alleged negligence of defendant in furnishing cars improperly iced and in improperly re-icing the cars while in transit and also upon a deviation from the agreed route plaintiff recovered a verdict for damages. On a motion for a new trial held that while the contract as made by the consignor was an intrastate contract the deviation from the agreed route rendered the carrier liable

as an insurer as such deviation destroyed the original contract including the provision exempting the carrier from liability for loss.

Said provision relating to presentation of claims for damage in a bill of lading in which there was no provision for re-icing did not relieve defendant from its negligence under the rule that where general words are used the stipulation does not apply to claims based on the negligence of the carrier.

Motion for a new trial on all the grounds specified in section 999 of the Code of Civil Procedure, except inadequacy of the verdict.

S. Wallace Dempsey, for plaintiffs.

Lester F. Gilbert, for defendant.

Fish, J. There are six separate causes of action alleged in the complaint, five of which are to recover damages to shipments of peaches and plums transported by the defendant as a common carrier from Appleton, N. Y., to Desbrosses Street station, New York city, arising from improper refrigeration of cars in which the same were carried. The plaintiffs base their right of recovery upon the negligence of the defendant in furnishing cars improperly iced and in improperly re-icing the cars while in transit; also upon a deviation from the agreed route. Each cause of action involves a separate shipment, and there was a car-load of fruit in each shipment. A bill of lading in each instance was delivered by the carrier to and accepted by the shipper and each bill of lading provided for the carriage of the fruit covered thereby from Appleton, N. Y., to Desbrosses Street station, New York city, and each contained various exceptions and also the following stipulation:

" Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable."

There was also written on each bill of lading: " Re-ice at Kendall and Karner."

Kendall is about thirty miles east of Appleton on the route to New York city and Karner is about midway between Albany and Schenectady on the main line of the defendant. Each of the cars was re-iced at Kendall as directed and then transported to Frankfort, N. Y., about ten miles east of Utica and on the West Shore division of the defendant. Each shipment was there re-iced and thence moved over the West Shore division to Weehawken and forwarded to destination. Karner is about sixty miles east of Frankfort and the cars were not taken by way of Karner and of course not re-iced there. The route from Karner to destination was over the main line of the defendant and wholly within New York state. The peaches and plums on arrival at destination had deteriorated and commenced to decay owing, as plaintiffs claim, to improper refrigeration of the cars due to the negligence of the defendant, and the plaintiffs have recovered a substantial verdict for their damages. The defendant's agent at Desbrosses Street station was immediately verbally notified of the bad condition of the fruit on arrival, and defendant's agent at Appleton, N. Y., was within four months likewise verbally notified. There was no written claim for such loss or damage made in writing to the defendant at the point of delivery or at the point of origin within four months after delivery of the property.

The rule of the common law is that a carrier is an insurer of the goods intrusted to him for transportation, except as against the act of God and the public enemy. This rule arose because the shipper surrendered control and dominion over the property and on account of the difficulty in proving the negligence of the carrier; but early in England stipulations in contracts of affreightment were made relieving the carrier from this strict liability and these stipulations were held good by the courts provided they did not relieve the carrier from liability for his own negligence; and generally in this country it is the law that the carrier can by contract limit his common law liability except for negligence. In this state, however, it is the law that a carrier could relieve himself from liability even for his own negligence (*Nelson* v. *Hudson R. R. R. Co.,* 48 N. Y. 498; 6 Cyc. 388 and cases therein cited), but such contracts are not favored and in order to relieve the carrier from liability for his own negligence the language must be explicit and the intention clear; general words will not suffice. *Nicholas* v. *N. Y. C. & H. R. R. R. Co.,* 89 N. Y. 370; *Jennings* v. *Grand Trunk R. Co.,* 127 id. 438; *Brewster* v. *N. Y. C. & H. R. R. R. Co.,* 145 App. Div. 51.

Consequently where general words are used such as are above quoted it is the law at least in this department that the stipulation does not apply to claims based upon the negligence of the carrier. *Richardson* v. *N. Y. C. & H. R. R. R. Co.,* 122 App. Div. 122.

In the *Richardson* case the court said: " It seems to be settled in this court that such a condition as the one in question does not apply to and will not relieve a common carrier from responsibility for negligence."

The condition there in question was that the claim for damages should be presented in writing promptly,

and, if delayed more than thirty days after delivery or time for delivery, that there should be no liability.

In the federal courts, however, it is well settled that a contract by a common carrier relieving him from liability for his negligence is against public policy and void (*Cau* v. *Texas & P. R. Co.,* 194 U. S. 427; *Adams Express Co.* v. *Croninger,* 226 id. 491); but on the other hand stipulations requiring claims to be presented within a certain time are held by the federal courts not contracts against negligence but conditions precedent to suit affecting not the carrier's liability but the shipper's remedy; and when the time is reasonable such stipulations are held by the federal courts to be valid and binding. *Queen of the Pacific,* 180 U. S. 49; *Southern Express Co.* v. *Caldwell,* 21 Wall. 264; *The St. Hubert,* 102 Fed. Repr. 362; *Metropolitan T. Co.* v. *Toledo, St. L. & K. C. R. Co.,* 107 id. 629; *The Westminster,* 127 id. 680; *The Arctic Bird,* 109 id. 167; *Missouri, K. & T. R. Co.* v. *Harriman,* 227 U. S. 657. And such is the general rule in this country. *Houtz* v. *Union P. R. Co.,* 17 L. R. A. (N. S.) 628, n; 5 Am. & Eng. Enc. of Law (2d ed.), 321.

The plaintiffs claim that these five shipments were each intrastate commerce and that the rule laid down in the *Richardson* case applies; while the defendant claims that they are interstate commerce and that the rule of the federal courts applies to the stipulation in question. There can be no doubt that Congress has by the Carmack amendment to the Hepburn Act (Interstate Commerce Act, § 20) taken possession of the subject of the liability of a common carrier for loss or damage to an interstate shipment and that the validity of any stipulation in a contract for an interstate shipment is a federal question to be determined by the federal and state courts under the general common law as pronounced by the federal courts. *Chicago, B.*

& *Q. R. Co.* v. *Miller,* 226 U. S. 513; *Missouri, K. & T. R. Co.* v. *Harris,* 234 id. 412.

While there was some dispute in the lower federal courts as to whether a shipment from one point in a state to another point in the same state where the goods in transit passed through another state was interstate or intrastate commerce, it is now settled by the highest federal court that such a shipment thus moved is interstate commerce (*Hanley* v. *Kansas C. S. R. Co.,* 187 U. S. 617; 28 L. R. A. [N. S.] 985, n.), and as the goods in question on their way to destination passed through a part of the state of New Jersey, the commerce in question was interstate and the stipulation above quoted is valid, if the contract is in force. The contract, however, is not in force because of a deviation from the agreed route. The contract as made by the consignor was an intrastate contract; it contemplated a route wholly within the state of New York. The provision was to re-ice at Karner, and the route from Karner to destination by the defendant's roads is wholly within New York; but whether this contract as originally made related to interstate or intrastate commerce is of no moment because it is no longer the contract of the parties. The contract provided for re-icing at Karner, instead the cars were deviated to the West Shore division and re-iced at Frankfort about sixty miles west of Karner. The provisions in a contract of affreightment for the re-icing of perishable fruit and naming the points at which such re-icing is to take place, are very substantial and important provisions of such contract. Where there is a deviation from the agreed route the carrier becomes an insurer and cannot avail himself of any exceptions in the contract. *Maghee* v. *Camden & Amboy R. R. Co.,* 45 N. Y. 514; *Johnson* v. *N. Y. C. R. R. Co.,* 33 id. 610; *Green-Wheeler*

*Shoe Co.* v. *Chicago, R. I. & P. R. Co.,* 5 L. R. A. (N. S.) 885.

In the *Maghee* case the court said: " When a carrier accepts goods to be carried, with a direction on the part of the owner to carry them in a particular way or by a specified route, he is bound to obey such direction; and if he attempts to perform his contract in a manner different from his undertaking, he becomes an insurer and cannot avail himself of any exception in the contract."

The deviation here destroyed the entire contract, including the above quoted provision. *McKahan* v. *American Ex. Co.,* 209 Mass. 270; 39 L. R. A. (N. S.) 1046; *Thorley* v. *O. S. S. Co.,* (1907) 1 K. B. 660; *Kish* v. *Taylor,* (1911) id. 625; *I. G.* v. *Macandrew & Co.,* (1909) 2 id. 360; *Balian & Sons* v. *Joly, Victoria & Co.,* 6 T. L. R. 345.

In *Pavitt* v. *Lehigh Valley R. R. Co.,* 153 Penn. 302, it was held that a deviation did not destroy a stipulation in a bill of lading requiring a claim to be made within a specified time; but this decision was undoubtedly based upon an early English case (*Davis* v. *Garrett,* 6 Bing. 716) in which there was an indication that such stipulation was not destroyed by the deviation. However, it is now well settled in England, as appears from the above cited case, that a deviation destroys the entire contract, and in the *McKahan Case, supra,* after referring to the *Pavitt* case, the court said: " But we are of opinion that the principle put forward by Lord Esher in *Balian* v. *Joly, Victoria & Co.,* is the true one and that the effect of a deviation is to do away with the express contract altogether — at least at the election of the shipper — In other words the breach of the express contract of shipment (which takes place when there is a deviation from route or departure from mode, method or manner of transpor-

tation) is such a breach on the part of the carrier that the shipper can rescind the express contract of shipment.''

The carrier having broken in a material part one of the covenants in an express contract to be performed on its part, cannot in reason or justice call upon a shipper to perform his covenants contained in the same contract. It is elementary that a party to a contract cannot repudiate burdensome covenants therein and at the same time enforce beneficial ones. It would be manifestly unjust to permit a carrier to make a contract for an intrastate shipment to be construed by the courts in accordance with the laws of the state and then by his own default and wrong to convert such a contract into a contract involving an interstate shipment to be construed and its validity to be determined by the courts in accordance with the law as pronounced by the federal courts.

In *Kish* v. *Taylor, supra,* the court said: '' The ship-owner by his own default has substituted a different voyage from that to which the special contract refers, and he cannot claim that contractual exceptions or obligations that relate to the one should be deemed to be transferred to the other.''

The other cause of action involves the shipment of a carload of apples from Holley, N. Y., to Barclay street, New York city, shipped on the 22d day of November, 1913, and arriving at Barclay street on December second of the same year, and is to recover damages on account of the negligent delay of the defendant. On this shipment a bill of lading was delivered to and accepted by the shipper which contained a stipulation similar to the stipulation above quoted, but in which there was no provision for re-icing. The negligence of the defendant and the amount of the damages on this car were stipulated, leaving the sole

question at issue as to whether the stipulation in question was valid or not and as to whether the same had been complied with. The usual route from Holley, N. Y., to Barclay street is wholly within the state of New York, and inasmuch as this was intrastate commerce the rule laid down in the *Richardson* case above quoted applies, and the stipulation in question does not relieve the defendant from its negligence.

There was presented within the four months' period specified in the stipulation a written claim for damages to an attorney for the defendant. This written claim was presented in the office of the plaintiffs' attorney at Lockport, N. Y., and was accepted by the attorney for the defendant and was a written claim for damages to the six shipments in question, with each shipment separately stated; and the defendant's agent at Barclay street was also verbally notified of the damage to the sixth shipment shortly after its arrival at destination. The object of stipulations of this character is to give the carrier reasonable notice in order that he may have an opportunity to protect himself against fraudulent claims. 17 L. R. A. (N. S.) 628, n. The stipulation in question provided that the written claim should be made at the point of origin or at point of destination; but if the defendant was going to insist upon a strict compliance with the terms of the stipulation its attorney should not have accepted the notice of claim presented to him at Lockport, and if the same had not been accepted then a strict compliance with the stipulation could have been made. Indeed the plaintiffs were lulled into security by the failure of the defendant to object to the manner and place of the making of the written claim, and in my opinion there was a sufficient compliance with the stipulation in question and a waiver by the defendant of a more strict compliance therewith. 6 Cyc. 509;

31

*Falkenberg* v. *Erie R. Co.*, 28 Misc. Rep. 165; *Marrus* v. *N. H. S. Co.*, 30 id. 421; *Atchison, T. & S. F. R. Co.* v. *Temple*, 13 L. R. A. 362; *Hinkle* v. *Southern R. Co.*, 126 N. C. 932; *Eckert* v. *Penna. R. R. Co.*, 211 Penn. St. 276.

Motion for new trial denied, with ten dollars costs.

Motion denied, with ten dollars costs.