ROGERS *et ux.* v. O. K. BUS & BAGGAGE CO. *et al.*

No. 4354. Opinion Filed May 4, 1915.

(149 Pac. 839.)

1. **TRIAL—Demurrer to Evidence—Direction of Verdict.** Under the procedure and practice in this state in trials by jury, it is the well established and settled law that, even though the estimony is undisputed, it should be so convincing that all reasonable men must draw the same conclusion from the facts proven, before the court is authorized to sustain a demurrer to the evidence, or direct a verdict.

2. **EVIDENCE—"Value"—Personalty—Presumption.** It is the well-known and generally accepted rule that, when a witness testifies as to the value of chattels in common use, it will be inferred that he means their market value, unless a different basis of value is fixed by the witness, or it is apparent that the witness bases his value on a different foundation.

3. **EVIDENCE—Expert Testimony—Necessity—Value of Wearing Apparel.** Rules of evidence are not so technical as to require evpert witnesses to prove the reasonable or market value of chattels, such as ordinary wearing apparel, in common use, where it is apparent from the facts proven that the value of the articles are within the knowledge of persons of ordinary intelligence and experience.

4. **EVIDENCE—Rules of Evidence—Application.** Rules of evidence are established for the purpose of enabling the court and jury to ascertain the true facts concerning the matters in controversy, and not for the purpose of hindering and delaying justice, by the enforcement of technical abstract phrases defining the rules for the admissibility of evidence.

(Syllabus by Robberts, C.)

*Error from County Court, Coal County;*

*Hon. R. H. Wells, Judge.*

Action by Joplin Rogers and wife against the O. K. Bus & Baggage Company and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded for new trial.

Form No. 10

*G. T. Ralls,* for plaintiffs in error.

*C. M. Threadgill,* for defendants in error.

ROBBERTS, C.   This case was originally brought in the county court of Coal county by the plaintiffs in error, also plaintiffs below, against the Missouri, Kansas & Texas Railway Company, the O. K. Bus & Baggage Company, and D. M. Phillips, defendants.   The petition alleges and the proof shows that the O. K. Bus & Baggage Company was simply a fictitious name, and that D. M. Phillips was the sale owner and proprietor of said company.   During the progress of the case the cause of action was dismissed as to the railway company, and also as to the O. K. Bus Company, leaving D. M. Phillips the sole defendant.

For cause of action the plaintiffs, among other facts, allege that:

"On or about the 4th day of October, 1907, plaintiff Sallie Rogers was on a passenger train en route from Chickasha to Lehigh, Okla.; that Lehigh is a station on a line of railway of the defendant the Missouri, Kansas & Texas Railway Company, and in order to reach Lehigh it became necessary for plaintiff to pass through Oklahoma City; that on her journey from Chickasha to Lehigh plaintiff had with her certain baggage, consisting of one large trunk, containing wearing apparel and jewelry; that as an incident to said journey it became necessary to have said trunk transferred from the depot of the St. Louis & San Francisco Railway Company in Oklahoma City to the depot of the Missouri, Kansas & Texas Railway Company; that plaintiff contracted with and employed defendant D. M. Phillips, as owner and proprietor of the O. K. Bus, Baggage & Carriage Company, to transfer said trunk from the depot of St. Louis & San Francisco Railway Company to the depot of the Missouri, Kansas & Texas Railway Company, and deliver the same to the Missouri, Kansas & Texas Railway Company in a good condition, and for a valuable consideration the said D. M. Phillips, as owner and proprietor of the O. K. Bus, Baggage & Carriage Company, undertook and became bound and liable to safely transfer and deliver said trunk to the Missouri, Kansas & Texas Railway Company at its depot in Oklahoma City.

"That these plaintiffs intended to leave Oklahoma City on their journey to Lehigh, and that plaintiff Joplin Rogers purchased for himself and plaintiff Sallie Rogers tickets over the Missouri, Kansas & Texas Railway Company from Oklahoma City to Lehigh, and paid therefor the usual fare; that plaintiffs requested the defendants to produce the baggage aforesaid, but said defendants failed to produce said baggage, and, though often requested to do so, still fails and refuses to deliver said baggage to plaintiffs, which said baggage was wholly lost by the negligence of the defendants. And plaintiffs further allege that they were the owners of the above-described baggage, and that they have received no payment for the same from the defendants.

"That at the time the said baggage was delivered to the defendant D. M. Phillips, he issued to plaintiffs a check or receipt for the same, which has become lost and cannot be found.

"That at the special instance and request of the defendant, plaintiffs made great effort and went to great expense to produce the delivery of said baggage, and in so doing expended certain sums of money and lost much time.

"Various items of damage suffered by plaintiffs by reason of the loss of such trunk and its contents, in addition to the value o said trunk and contents thereof, which are more particularly shown in an itemized account hereto attached, marked Exhibit A, and made a part hereof, are as follows: Phone messages, 75 cents; fare to Oklahoma City and return on two trips, $16.60; loss of time, $10; and special damages by reason of the fact that said trunk contained a large part of the wardrobe of plaintiff Sallie Rogers and her son, and that they were unable to immediately or for a long time to replace the same, and were at great expense and inconvenience in procuring clothing necessary and incident to their station in society, paying dressmakers' bills, being deprived of the pleasure of society, the sum of $125. The value of said trunk, together with its contents, was the sum of $408, and the same has been wholly lost to the plaintiffs through the negligence of the defendant, whereby plaintiffs have sustained great damages in the sum of $663.60."

For answer the defendants file a general denial, unverified.

The case was tried to the court and jury. In support of their cause of action by plaintiffs, Mrs. Rogers testified, among

other things, as follows:

"Q. What is your name? A. Mrs. Joplin Rogers. Q. Where do you reside? A. Lehigh, Okla. Q. How long have you lived at Lehigh? A. 23 years. Q. Do you know D. M. Phillips? A. I have met him. Q. Along about October, 1907, where were you living? A. At Lehigh. Q. Did you take a trip to Chickasha about that time? A. Yes, sir. Q. How long did you remain at Chickasha? A. Several weeks. Q. Do you remember when you left Chickasha for Oklahoma City? A. Some time in the month of October, 1907. Q. When you reached Oklahoma City did you employ the O. K. Bus & Baggage Company to transfer your trunk to the Missouri, Kansas & Texas Station. A. Before we arrived at Oklahoma City a gentleman came on the train, gave me a check for my trunk, and I paid him to transfer it. Q. Have you called for your trunk? A. Yes. Q. Have you made any effort to locate it? A. Yes, Q. Do you know what was in the trunk. A. I made a list of the articles. Q. You made a list of the articles contained in it? A. Yes. Q. Now, to refresh your memory, that list was introduced as evidence and marked Exhibit A, the list that you made —you made soon after the trunk was lost? A. Several days after I discovered the trunk was lost. Q. Can you remember the different articles you had in the trunk at the time it was lost? A. Yes. Q. I believe you state that you made a list of the articles you had in the trunk, and that that list was filed in the trial of this suit two years ago. A. Yes, sir. Q. The list that you made and filed in the court at the trial before, also the exhibit in the petition, were copies of that list? A. Yes. Q. Mrs. Rogers, I will ask you to examine this and see if you know what it is. A. A list of articles contained in the trunk. Q. Have you the original list? A. No, sir; I left it in the court. O. What was the value of the trunk at that time? A. $12. Q. I will ask you to refresh your memory from this memorandum and name another article contained in the trunk at the time it was lost. A. One lady's hat. Q. Do you remember the market value of that article at that time? A. Yes. Q. What was the market value of the hat at that time in Oklahoma City? A. $15. Q. Mrs. Rogers, did you own the trunk that you delivered to the defendant herein for transportation some time in the month of October, 1907? A. Yes, sir. Q. Have you that trunk now? A. No, sir. Q. Mrs. Rogers, were you familiar

with the articles contained in the trunk that was lost? A. Yes, sir. Q. Do you know who placed them in the trunk? A. Yes, sir; I placed them in the trunk. Q. Who bought the goods? A. I bought them. Q. Mrs. Rogers, you state that you were the owner of the trunk that was lost containing articles belonging to yourself and family, and that afterwards you made a list of the articles contained in the trunk? A. Yes, sir. Q. When did you make out that list? A. I made out the list as I could remember the articles after I discovered that the trunk was lost. Every time I would think of an article that was in the trunk, I would place it on the list. Q. Did you give your attorneys a list of the articles contained in the trunk the day of the trial? A. Yes, sir. Q. Name the first article that you remember. A. A trunk. Q. Did you buy that trunk? A. Yes, sir. Q. Do you remember what you paid for it? A. I paid $12 for it. Q. At the time the trunk was lost do you remember what articles were in it? A. Yes, sir. Q. Refresh your memory, and then, independent of any memorandum, state if you know another article that was lost at the time you delivered the trunk to the defendant herein besides the trunk. A. Yes. Q. State what other article was lost at the time mentioned herein. A. A hat. Q. Who bought that hat? A. I did. Q. What did you pay for the hat? A. It was a handmade hat, and I paid $15 for it. Q. What condition was the hat in when you delivered the trunk to the defendant herein? A. The hat was in good condition; I had never worn it. Q. Was the hat worth as much at the time it was lost as it was when you bought it? A. Yes. Q. State, if you know, what the reasonable market value of the hat was, or a hat of similar kind, at the time you delivered the trunk to the defendant herein to be transported to the Missouri, Kansas & Texas Railway depot in Oklahoma City? (Defendant objects for the reason that it is not the proper way to prove the value of the hat. Objection sustained. Plaintiffs excepts). Q. Did you lose any other articles at that time? A. Yes. Q. What was it? A. A pair of lady's slippers. Q. Who was the owner of the slippers? A. I was. Q. What did you pay for them? A. $5. Q. At the time they were lost do you remember what the condition of the slippers were? A. Yes. Q. State to the jury the reasonable market value of the goods at the time you delivered them to the defendant in that community at that time. (Defendant objects for the reason that the witness has not shown herself properly qualified to testify as to the value of the articles con-

tained in said trunk. Objection sustained. Plaintiff excepts).
Q. Do you remember another article contained in the trunk?
A. Yes, sir. Q. Name one. A. A black dress. Q. How
long had you had the dress? A. Only a short time; it had never
been worn. Q. Do you know what the dress cost? A. Yes,
sir. Q. Who bought it? A. I did. Q. At the time it was
lost do you know the condition as compared with its condition
when you bought it? A. Yes, sir; it was in good condition.
Q. Do you know what the reasonable market value of the dress
was in Oklahoma City at that time? A. Yes, sir. Q. Have
you seen similar articles bought and sold on the market? A.
Yes, sir. Q. Do you know the exact value of the dress just
prior to and subsequent to the time the dress was lost? A. Yes,
sir. Q. What was it? (Defendant objects, for the reason that
the witness has not shown herself properly qualified to testify as
to the value of the dress. Objections sustained. Plaintiff ex-
cepts. It is hereby agreed by the plaintiff and defendant in
this case as to the questions and answers to the remaining articles
said to have been in said trunk in question shall virtually be the
same, the objections the same, and the rulings of the court the
same). Q. Do you know any other article that was lost in the
trunk? A. Yes. Q. Name one. A. One linen dress. Q.
Who bought the linen dress? A. I did. Q. How much did
you pay for it? A. $12. Q. Was the dress in the trunk at
the time you delivered it to the defendant herein? A. Yes, sir.
Q. Do you know what the reasonable market value of the dress
was, or one of similar kind at that time in that community? A.
Yes, sir. Q. What was the reasonable market value of this
article at that time and in that community? (Defendants object,
for the reason that the witness has not shown herself properly
qualified to testify as to the value of the articles contained in the
trunk mentioned herein. Objection sustained. Plaintiff ex-
cepts.)"

The foregoing is a sample of the testimony offered and the
ruling of the court thereon. It is apparent that the plaintiffs
were unable to introduce their testimony as to the value of the
goods lost, and upon the question of the loss of the goods there
is no controversy.

At the close of the plaintiffs' testimony, the defendant D. M.
Phillips lodged the following demurrer:

"Comes now the defendant and demurs to the testimony introduced by the plaintiffs in this case and says that it is not sufficient to make out a case against the defendant and in favor of the plaintiffs." "Demurrer sustained, and case dismissed, to which the plaintiffs except."

This ruling of the court seems to be upon the theory that it required expert testimony to establish the value of the trunk and the contents thereof, and that the witnesses have·not shown themselves qualified by reason of special knowledge or information as to the value of goods of that class and character to place a value thereon. In this the court committed error. It is well established in this state that expert witnesses are not needed to prove the market value of chattels in common use, where such value is within the knowledge of persons of ordinary intelligence and experience, and that, where a witness testifies generally as to the value of articles in common use, it will be assumed that the market value is meant, unless it appears from the testimony of the witness that he bases the value given upon some other consideration. Such has been the holding of this court practically since its organization.

The plaintiff Mrs. Rogers testified not only that she bought the goods, and the price she paid for them, many of which had never been worn or used, but also that she had personal knowledge of the market value of the goods in Oklahoma City, the place where the trunk was lost, and not only that, but she testified that she knew the actual value of the goods, and notwithstanding her qualifications in that particular, and her testimony in that behalf, the court for some unaccountable reason was of the opinion that she was not qualified to state either the value of the goods or the market value thereof. On a trial for the conversion of goods, defendant may be asked as to the value of the goods at the time they were taken. *Robinson v. Peru Plow Co.,* 1 Okla. 140, 31 Pac. 988.

"Expert witnesses are not needed to prove the  *  *  * market value of chattels in common use, where such value is

within the knowledge of persons of ordinary intelligence and experience." *Filson v. Territory,* 11 Okla. 351, 67 Pac. 473.

In speaking upon this subject, and the tendency of courts, Justice Burford uses this language:

"There is too much of a tendency to require experts to testify as to matters of everyday occurrence and common knowledge. The average farmer at this day and age is possessed of sufficient intelligence and experience to enable him to tell the market price of farm products, live stock, and those articles they make common use of in their business, and generally are better qualified to fix the values than persons who are engaged in some specialty, and buy only when they can get a good bargain, and then sell the article at less than its value in order to encourage trade." *Supra.*

In this case the witness seemed to be a lady of more than ordinary intelligence, and who had had experience in purchasing goods of the character contained in the trunk, she knew the goods and knew their condition better than any other person. She knew and testified as to the extent of which they had been worn or used. She testified as to their original cost, which was proper, under the circumstances, and as to their reasonable value at the time they were delivered to the defendant. Her testimony was competent, and should have been submitted to the jury.

For thse reasons, we are of the opinion that this case should be reversed and remanded for new trial, and we so recommend.

By the Court: It is so ordered.