## O. K. TRANSFER & STORAGE CO. v. NEILL et al.

No. 7374—Opinion Filed July 11, 1916.

(159 Pac. 272.)

1. **Evidence—Documentary Evidence—Parol Evidence.**

Where an oral contract is partially reduced to writing, and the writing evidencing it is not a complete and final statement of the entire transaction, parol evidence not inconsistent with such written contract is admissible to show the full agreement.

2. **Carriers—Transfer Company—Deviation.**

Where a transfer company agreed to ship the goods of plaintiff over a certain route. and took from plaintiff a shipping order limiting the liability of the transfer company, and thereafter the transfer company shipped the goods over a different route to that specified by the shipper, in consequence of which they were burned: held, that the transfer company was liable for the value of the goods less the amount recovered from the railroad company, without regard to the limitation of liability in the shipping order.

3. **Evidence — Opinion     Evidence — Expert Testimony.**

A witness is not required to be an expert to prove the reasonable or market value of goods, such as ordinary wearing apparel and household furniture, where it is apparent from the facts proved that the value of the articles is within the knowledge of persons of ordinary intelligence and experience.

4. **Damages—Measure—Household Goods.**

In an action for loss of household goods and wearing apparel, which have no fixed market value, the measure of damages is the value of the goods to the owner; not a fanciful value which such owner might place upon them, but such reasonable value as they had to him, considering the nature and condition of the goods and the purposes for which they were adopted. St. L. & S. F. R. Co. v. Dunham, 36 Okla. 724, 129 Pac. 862.

(Syllabus by Burford, C.)

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by Mrs. H. A. Neill against the O. K. Transfer & Storage Company, and the St. Louis & San Francisco Railroad Company, for loss of certain household goods. From a judgment for the plaintiff against the defendants, the Transfer Company appeals. Affirmed.

Warren K. Snyder, for plaintiff in error.

Wright & Blinn, for defendant in error, Mrs. H. A. Neill.

R. A. Kleinschmidt, for St. Louis & S. F. R. Co.

Opinion by BURFORD, C. The record in this case discloses that Mrs. Neill, who had formerly lived in Oklahoma City, but who was at the time living in Des Moines, Iowa, directed her friend, Mrs. Hughes, then residing in Oklahoma City, to have Mrs. Neill's household goods crated, shipped, and forwarded to her at Des Moines, over the line of the Rock Island railroad. Pursuant to such instructions Mrs. Hughes called upon the O. K. Transfer & Storage Company and asked them to ship the goods. There is conflict in the evidence as to whether or not she directed them to ship the goods over the Rock Island road, but that question was submitted to the jury, and there being ample evidence to sustain their finding we, for the purposes of the case, assume that she did give such specific shipping directions. The transfer company packed and shipped the goods over the line of defendant, St. L. & S. F. R. Co., at Miami, Okla., and while on the line of road of that company, they were destroyed by fire. Prior to the shipment, the

transfer company had obtained from Mrs. Hughes what was denominated a "shipping order and release," the material parts of which are as follows:

"Shipping Order and Release.

"11—6—1913.

"O. K. Transfer & Storage Co., City:

"Please forward lot of household goods from Oklahoma City to Des Moines, Iowa. In consideration of the reduced rate made for the shipment of my household goods, it is understood and agreed that O. K. Transfer & Storage Company acts only as agent for the shipper and is not responsible for damage or loss beyond the amount which may be collected from the railroad companies over whose lines said goods are forwarded. Desiring to receive the benefit of the reduced rate, I release goods to the value of ten ($10.00) per cwt., in case of loss or damage and subject to other printed conditions of the regular bill of lading issued by the railroad company via whose lines goods are forwarded. It is expressly agreed that O. K. Transfer & Storage Company will not be held responsible for loss or damages of goods by fire or otherwise in excess of ten dollars ($10.00) per cwt. valuation while in its care, or in cars being loaded or unloaded, or in warehouses awaiting shipment or delivery. It is further expressly agreed that O. K. Transfer & Storage Company is hereby authorized to forward the household goods referred to in this shipping order at released valuation of ten ($10.00) per cwt."

The goods were forwarded over the line of the Frisco in a car with other household goods going to Des Moines. The transfer company signed a bill of lading which fixed the value of the goods, and took the reduced rate offered by the carrier, in consideration of which its liability was limited to $10 per hundredweight. After the destruction of the goods, the plaintiff brought suit against the transfer company and the railroad company, alleging the loss of goods and seeking to recover their value, alleged to be $2,314.55. The transfer company denied the specific direction and set up its shipping order heretofore set out. The railroad company pleaded its bill of lading, and at the trial in effect offered to confess judgment for $10 per hundredweight for the goods, amounting to something over $300. The court instructed the jury to return a verdict against the railroad company for this amount and no other, and submitted the cause to the jury as between the plaintiff and the transfer company, upon the theory, as set out in the instruction, that if the plaintiff's agent had given specific directions as to the route to be used, and the transfer company had forwarded the goods over some other road, the transfer company would be liable for the difference between their value and the amount recovered from the railroad company, but that if the agent

did not give special directions, the shipping order executed by Mrs. Hughes was a complete defense on behalf of the transfer company.

Upon these issues the jury returned a verdict in favor of the plaintiff and against the transfer company in the sum of $1,026.57, with interest and costs. Numerous errors are alleged, but we think they may be properly determined upon the various questions of law hereinafter considered.

First. Was evidence admissible to establish the direction given by Mrs. Hughes as to the shipment of the goods? An examination of the shipping order and release convinces that it was not intended to cover the entire contract. Such being the case, parol evidence was admissible, not to vary the terms of the contract already made, but to prove what the contract actually was.

In the recent case of Smith v. Bond 56 Okla. 12, 155 Pac. 1116, this court said:

"Where an oral contract is partially reduced to writing, and the writing evidencing it is not a complete and final statement or the entire transaction, parol evidence not inconsistent with such written contract is admissible to show the full agreement."

In the case at bar we think, as in Smith v. Bond, supra, that the shipping order and release was only an incident to the entire contract and did not attempt to define the whole contract, and that therefore parol evidence was admissible to prove the remaining terms of the contract.

The question then arises as to the effect of the shipping order and release given to the transfer company. It is exceedingly doubtful to our minds whether or not this release was ever intended to cover a case of this nature. However that may be, it is clear that it cannot operate to limit the liability of the transfer company in this case, for the reason that it was based upon the stipulation and condition of the contract, which it is true was oral, that the goods should be shipped over the Rock Island railroad. When the transfer company violated its duty as agent and sent the goods over the Frisco, its contract became entirely inapplicable, and the stipulations thereof could not limit its liability for its wrongful act as agent.

The principles supporting this doctrine have been many times enunciated in the English and American courts. The liability is placed upon various grounds. The most widely adopted and perhaps the soundest is that laid down in McKahan v. Express Co., 209 Mass. 270, 95 N. E. 785, 35 L. R. A. (N. S.) 1046, Ann. Cas. 1912B, 612, where, speak-

ing of the effect of a deviation by a carrier from the route specified by the shipper, the court said:

"The effect of a deviation is to do away with the express contract altogether, at least at the election of the shipper. In other words, the breach of the express contract of shipment (which takes place when there is a deviation from route or departure from mode, method, or manner of transportation) is such a breach on the part of the carrier that the shipper can rescind the express contract of shipment."

This case was one in which the carrier had taken a bill of lading, based upon a reduced rate, and which limited its liability to a certain value; and the court held that when the carrier deviated from the route prescribed therein, it lost the benefit of the stipulations of the bill of lading. In the notes to the case as reported in L. R. A. and Ann. Cas., many authorities upon the subject are collected.

In Lynch v. N. Y. Central & H. R. R. Co., 89 Misc. Rep. 472, 153 N. Y. Supp. 633, the court said:

"This contract, however, is not in force because of a deviation from the agreed route. * * * The deviation here destroyed the entire contract. * * * The carrier, having broken in a material part one of the covenants of an expressed contract to be performed on its part, cannot in reason or justice call upon a shipper to perform his covenants contained in the same contract. It is elementary that a party to a contract cannot repudiate burdensome covenants therein and at the same time enforce beneficial ones."

In Merrick v. Webster, 3 Mich. 268, a transportation company contracted to forward goods "by sail on the lake" all the dangers of the sea being assumed by the shipper. Instead the transportation company forwarded the goods by steam. The court said:

"The plaintiffs below, by the terms of the contract, took upon themselves the dangers of the sea, upon the condition that they were transported 'by sail on the lake,' and upon no other condition did they assume the risk."

It was there held that, the carrier having sent the goods by steam, as a result of which they were lost, it was liable. See, also, Hand v. Baynes, 4 Whart. (Pa.) 204, 33 Am. Dec. 54; Philadelphia & R. R. Co. v. Beck, 125 Pa. 620, 17 Atl. 505, 11 Am. St. Rep. 924; Saxon Mills v. N. Y., N. H. & H. R. Co., 214 Mass. 383, 101 N. E. 1075; Brown & Haygood Co. v. Pa. Co., 63 Minn. 546, 65 N. W. 961; Balian v. Joly & Co., 6 Times, L. R. 345; Thorley v. Orchis, S. S. Co., 1 K. B. 660 (1907) 7 Amer. & Eng. Ann. Cas, 281; Kish v. Taylor (1911) 1 K. B. 625: Internationale, etc., v. McAndrews & Co. (1909) 2 K. B. 360.

Some of the American cases have gone upon the ground that the contract is not done away with altogether by deviation from route, but that it must be shown that the loss was a result of the deviation. These cases in our judgment are not in accord with the weight or reason of authority, but whether they may be sound or unsound is for the purposes of this case immaterial, since it is apparent that the loss occurred upon the line of the Frisco, and was the direct result of the deviation from route.

So far we have considered cases applicable to carriers. The principles therein enunciated, however, are clearly applicable to the case at bar. Furthermore, the courts of this country have frequently held that where a warehouseman or bailee deviates from the conditions of his contract whereby the goods or their value are lost, he is liable. Graves v. Smith, 14 Wis. 5, 80 Am. Dec. 762; Howell v. Morlan, 78 Ill. 162; Coykendall v. Eaton. 55 Barb. (N. Y.) 188; Jeffersonville R. Co. v. White, 69 Ky. 251; Greenall v. Hersum, 220 Mass. 278, 107 N. E. 941; Cerkel v. Waterman, 63 Cal. 34. We are of the opinion, therefore, that the plaintiff's release could not affect the liability for failing to ship the goods by the route directed.

Error is also assigned upon the admission of certain testimony. The plaintiff in giving her deposition testified from a list of the lost goods attached to the petition. It was afterwards established at the trial that this list had been made by Mrs. Hughes at about the time the goods were shipped, and she testified positively that every article, except one and it was waived by the plaintiff, was actually delivered to the transfer company. Under these circumstances, we think it was not error to allow the witness to refer to the list in giving her testimony. Elwell v. Purcell, 42 Okla. 1, 140 Pac. 412. This list was a part of the petition, and we think its use by the witness was proper. Friar v. Caswell, 79 Wash. 470, 140 Pac. 564. At the trial the list was offered. The court excluded the one article which Mrs. Hughes could not identify, and the value of the articles printed on the list, which it appeared had been put there by Mrs. Neill. Under the circumstances we think the introduction of the list could not have harmed the plaintiff, as Mrs. Hughes had already testified, item by item, that the goods contained in it, with the exception of the one waived, had been by her actually delivered to the transfer company, and there was no contradiction of her testimony. The amounts written on the list were excluded, and so far as the list of articles was concerned its admission could not prejudice the plaintiff in error.

Complaint is also made as to the competency of the witnesses who testified. It is not necessary to have experts to testify to the value of household goods and wearing apparel, if the witnesses are reasonably familiar with the goods concerning which they are testifying. The testimony is not essentially different from that in Rogers v. O. K. Bus & Baggage Co., 46 Okla. 289, 148 Pac. 837, and for the rejection of which that case was reversed. The testimony complained of in relation to the cost of the articles was elicited by the plaintiff on cross-examination. In any event it has been held that cost might be an item in determining the value of articles, depreciation being also considered. Filson v. Territory, 11 Okla. 351, 67 Pac. 473; Burgess v. Felix, 42 Okla. 193, 140 Pac. 1180.

Error is also alleged upon the court's instruction upon the measure of damages, and upon certain questions allowed to be asked the witnesses in relation to the value of the goods. Both the instructions and the questions are very close to the language in St. L. & S. F. R. Co. v. Dunham, 36 Okla. 724, 129 Pac. 862, and were apparently based upon that case. It was there said:

"In an action against a carrier for loss of household goods and wearing apparel, which have no fixed market value, the measure of damage is the value of the goods to the owner; not any fanciful value which he might place upon them, but such reasonable value as from the nature and condition of the goods and the purpose to which they were adapted and used they had to him."

We see no reason to repudiate the doctrine of this case, and upon its authority the instructions are approved.

Finally it is claimed that the judgment against the railway company was a bar to a judgment against this plaintiff. We think not. In G. N. Ry. Co. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703, the Supreme Court considered a case in which a forwarder, such as the plaintiff in error, had shipped goods at reduced rates in carload lots. The suit was against the carrier, and the Supreme Court of the United States held that the plaintiff was limited in her recovery to the declared value, saying:

"Plaintiff contended, however, that she had expected her goods to be transported as a separate consignment. But the transfer company had been intrusted with goods to be shipped by railway, and, nothing to the contrary appearing, the carrier had the right to assume that the transfer company could agree upon the terms of the shipment, some of which were embodied in the tariff. The carrier was not bound by her private instructions or limitations on the authority of the transfer company, whether it be treated as agent or forwarder. If there was any under-valuation, wrongful classification, or violation of her instructions, resulting in damage, the plaintiff has her remedy against the company."

This decision is sufficient authority both for the limitation of recovery against the railway company, and for the recovery of the value of the goods above that amount from the plaintiff in error.

Finding no error in the record, the judgment is affirmed.

By the Court: It is so ordered.